## Fulmer *versus* Seitz *et al*.

1. F. agreed to lend $4000 to S. at 12 per cent. interest, S. paying $240 in advance. S. delivered to F. a note signed by himself and others as his sureties. Afterwards F., discovering that nothing appeared in the note about interest, told S., who directed F. to insert that it was with interest. F. did so in S.'s presence. This avoided the note as to the sureties.

2. F. sued for the note, principal and interest. *Held*, that the refusal to allow him at the trial to strike out the addition as to interest was proper.

3. One who makes a voluntary and unauthorized alteration in an instrument and insists upon it by going to trial on it, has no *locus pœnitentiœ*, by which on his failure to establish his right to recover, he can undo the wrong.

4. Neff *v*. Horner, 13 P. F. Smith 327, approved; Kountz *v*. Kennedy, Id. 187, decided doubtingly, distinguished.

March 21st 1871. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northampton county*: No. 399 to January Term 1871.

Henry Fulmer, in the court below, brought an action of assumpsit against George Seitz, Henry A. Sage, John A. Seitz and George H. Bender. The writ was issued March 27th 1869.

The 1st count of the declaration was for $4000 money had and received: 2d. $4000 money lent and advanced: 3d. On a note of defendants for $4000, payable one year after date to the order of the plaintiff: 4th. For $4000 money lent and advanced by the plaintiff to George Seitz, at the special instance and request of the defendants.

The case was tried, January 27th 1871, before Longaker, P. J. The plaintiff gave evidence that George Seitz had called on a broker to procure a loan of $4000 for him, he was to give the other defendants on the note with him; he offered to pay 12 per cent. interest. The plaintiff, Fulmer, told the broker that George Seitz could have the loan. The broker had no communication with the other defendants.

The plaintiff testified that the broker had called on him for the loan; he then saw George Seitz; plaintiff gave his note, which was discounted and $4000 realized from it; two or three weeks afterwards, George Seitz paid the plaintiff $240 bonus, and received the note in suit. About two months after the note was signed,

[Fulmer *v.* Seitz.]

he told George Seitz that the note was " a non-interest bearing note, and he said you just add the words 'Int. payable, semi-annually,' and that it would all be right.    I did so in his presence." George Seitz had parted with the note previously to its becoming due.   After it was due, the plaintiff met with the other three signers to arrange the note ; a calculation was made, which Sage, in the presence of the other two, said was correct; each of the parties agreed to pay one-third.    John Seitz offered to give his father's check for his third; the father was there with the check ; Sage and Bender were to give their joint note for their two shares ; the interest was calculated and added in.    " We were about passing the notes when I handed the original note to Bender ; he said it was not worth anything, and I should bring suit: this ended the con-ference."    On cross-examination, he said, " Bender asked me to let him see the note : he asked who put 'Int. payable semi-annu-ally' there ?   I said I had : that was the time Bender said the note was not worth anything.    All the other conversation had taken place before the note was produced."

The plaintiff was asked to state what George Seitz said when he brought the note, as to the capacity in which he borrowed the money, and for whose use.    This was objected to by the de-fendant, except as to George Seitz.    The objection was sustained and a bill of exceptions sealed.

John A. Seitz was called by plaintiff as for cross-examination. In the course of the examination he was asked :

" Did you not understand at the time the money was loaned that it was to bear interest ?"    This was objected to by the defend-ants, the objection sustained, and a bill of plaintiff's exception sealed.    Witness said : " George Seitz did not tell me we were to pay interest on that note."

His testimony did not materially differ from the plaintiff's as to the conversation when they met to arrange about the note.    He also said that at the time of the conversation before the note was produced they did not know that it had been altered.    Neither Sage nor Bender agreed to pay after the alteration had been dis-covered.

George Seitz testified that he had borrowed the money for him-self, and the others were his sureties.

The plaintiff then offered the note in evidence as follows :—

" $4000.                          Easton, February 11th 1868.

" One year after date we or either of us promise to pay to the order of Henry Fulmer four thousand dollars without defalca-tion for value received.   *Int. payable semi-annually.*

" George Seitz,
" Henry A. Sage,
" John A. Seitz,
" Geo. H. Bender."

[Fulmer *v.* Seitz.]

The offer was objected to by defendants, rejected by the court, and a bill of exceptions sealed.

The plaintiff then asked the leave of the court to strike out of the note · the words " *Int. payable semi-annually*," and the same words from the *narr.*, on the ground that there was no fraud upon the part of the plaintiff, to which the defendants objected, and the objection was sustained by the court, and a bill of exceptions sealed.

The plaintiff then offered to prove by himself that at the time he received the note he did not observe that it was payable without interest, and that he only discovered it about two months after he had received it; this was objected to by the defendants, the objection was sustained by the court, and a bill of exceptions sealed.

Both parties submitted points, found in the assignments of error.

The court charged: " In the absence of testimony showing the defendants were original promissors, there can be no recovery had in this case, and your verdict must be for the defendants."

The verdict was for the defendants. The plaintiff took a writ of error, and assigned for error :—

1. " Not permitting the plaintiff to prove the declarations made by George Seitz when he obtained the loan, in what capacity he borrowed the money."

2. " Refusing to permit the plaintiff to ask John A. Seitz the following question, viz. : ' Did you not understand at the time the money was loaned, that it was to bear interest ?' "

3. " Refusing to permit the plaintiff to give the note sued upon in evidence."

4. " Refusing to permit the plaintiff to strike from the note sued upon and from the *narr.* the following words, ' *Int. payable semi-annually.*' "

6. " Giving a negative answer to the plaintiff's 1st point, which was as follows :

" ' That if the jury believe that before the time or at the time the money was loaned, the defendants agreed to be responsible for its payment, the plaintiff is entitled to recover.' "

7. " Giving a negative answer to the plaintiff's 2d point, which was as follows :

" ' That if the jury believe that before the time or at the time the money was loaned by the plaintiff, the defendants agreed to be responsible for its payment, the plaintiff is entitled to recover the balance of the money loaned, after deducting the amount received by the plaintiff in part payment under the counts in the *narr.* for money had and received, and money lent and advanced.' "

8. " Answering affirmatively the defendants' point, which was as follows :

[*Fulmer v. Seitz.*]

" ' There is no evidence in the cause that will authorize a recovery on the counts of the *narr.* for money had and received, and for money lent and advanced, and therefore the verdict must be for the defendants.' "

*O. H. Meyers* and *E. J. Fox*, for plaintiff in error.—An alteration, leaving the effect of the instrument as it was before, is not material: Miller *v.* Gilleland, 7 Harris 122.   " Int. payable semi-annually" does not necessarily imply interest, payable from the date of the note: 2 Phillips's Ev. 429; Edwards on Bills 708, 712, 713; Byles on Bills 227; Addison on Contracts 1154; 2 Parsons on Contracts 14; Potter *v.* Gardner, 5 Peters 718; Doman *v.* Dibden, Ryan & Moody· 381; Richards *v.* Richards, 2 Barn. & Ad. 446; Roffey *v.* Greenwell, 10 Ad. & Ellis 222; Powell *v.* Guy, 3 Dev. & Batt. 70; Kilgrove *v.* Powers, 5 Blatchford 22; Billingsby *v.* Cahoon, 7 Ind. 184; Cooley *v.* Rose, 3 Mass. 221; Kennerly *v.* Nash, 1 Stark. R. 453.   The alteration being in accordance with the original agreement of the parties, their consent might reasonably be implied thereto, and such an alteration would not make the note void: 2 Parsons on Notes 570; Clute & Bailey *v.* Small, 17 Wend. 238; Boyd *v.* Brotherson, 10 Id. 93; Jacob *v.* Hood, 6 Maule & Selw. 142; Chitty on Bills 206–209; Kershaw *v.* Cox, 3 Esp. 246; Brutt *v.* Picard, Ry. & Moo. 37; Arnold *v.* Stedman, 9 Wright 189; Kountz *v.* Kennedy, 13 P. F. Smith 187.

*H. Green* (with whom was *W. W. Schuyler*), for defendants in error.—The alteration of an instrument avoids it, without regard to the motive: Marshall *v.* Gougler, 10 S. & R. 164; Beary *v.* Haines, 4 Whart. 20; Henning *v.* Werkheiser, 8 Barr 518.   The onus of showing a lawful alteration is on the holder: Simpson *v.* Stackhouse, 9 Barr 186; Kennedy *v.* Lancaster Co. Bank, 6 Harris 347; Miller *v.* Gilleland, 7 Id. 119; Paine *v.* Edsell, Id. 178; Southwark Bank *v.* Gross, 11 Casey 80; Hill *v.* Cooley, 10 Wright 259; Neff *v.* Horner, 13 P. F. Smith 327; Warrington *v.* Early, 2 Ell. & Black. 763; Dewey *v.* Reed, 40 Barb. 16; Woodworth *v.* Bank, 19 Johns. 391; Sutton *v.* Toomer, 7 B. & C. 461; 2 Pars. on Bills 549.   Unless expressed otherwise in the note, interest commences from maturity: Kennerly *v.* Nash, 1 Stark. 452; 2 Pars. on Bills 392; Daggett *v.* Pratt, 15 Mass. 177; Ludwick *v.* Huntzinger, 5 W. & S. 51; Warrington *v.* Early, *supra;* Miller *v.* Gilleland, *supra*.   It is immaterial what kind of understanding the defendants may have had as to what their contract was.   The only question is what *was* the contract: Kennedy *v.* Lancaster Co. Bank, *supra;* Perring *v.* Hone, 4 Bingh. 28; Clute *v.* Small, 17 Wend. 238.   The change having been made without the consent of the sureties, they are discharged:

[*Fulmer v. Seitz.*]

Theob. on Principal and Surety, §§ 152–166 ; Hibbs *v.* Rue, 4 Barr 350 ; Uhler *v.* Applegate, 2 Casey 140.   As to the refusal to strike out the altered words : Neff *v.* Horner, *supra.*

The opinion of the court was delivered, May 8th 1871, by

AGNEW, J.—The first error assigned embraces the subject of three bills of exception, and is not assigned according to rule. We may remark, however, that the court did not refuse to hear the declarations of George Seitz, the principal on the note, as against himself, but only as to his co-defendants.   Clearly, there was no error in this, as they could not be affected by his declarations without showing a partnership relation, of which there was no proof.   The impropriety of receiving these declarations against the other defendants is shown by the very testimony itself of George Seitz, given by the plaintiff afterwards, in which the fact offered to be proved by his declarations is explicitly contradicted.   The second assignment of error is liable to the same objection.   The question was general, and if answered as put, would have affected the co-defendants ; while the witness was permitted to state that George Seitz did not tell him they were to pay interest on the note.   The evidence is clear that George Seitz was the principal, and the other defendants sureties, and that the sureties were not actors, the whole transaction being between the plaintiff and George Seitz ; the others merely signing the note to secure repayment of the loan.   There is no evidence that they were parties to the making of the loan, or participated in the slightest degree, until they signed the note.   The transaction depends wholly on the note as it regards them.   They could not be affected, therefore, by the understanding of the plaintiff with George Seitz, or even with John A. Seitz, one of their number.

The third and fourth assignments involve the principal question in the cause.   According to the plaintiff's testimony, about two months after the note in suit was delivered to him, George Seitz came to his house.   He mentioned to Seitz that the note was non-interest bearing, and Seitz said, " You just add the words ' Int., payable semi-annually,' and it will be all right."   He did so, in Seitz's presence.   He also states that the agreement between him and Seitz, at the time of making the loan, was, that Seitz should pay him 12 per cent. interest, and that in two or three weeks after the note was given, Seitz handed him $240, the bonus part of the interest or six per cent. on $4000, the principal of the loan.   The alteration of the note by the addition of interest was a conceded voluntary act on part of the plaintiff, though not fraudulent or wrongful as to George Seitz, the principal, and the question is, whether this act avoided the note as to the sureties. The case is, we think, ruled by Neff *v.* Horner, 13 P. F. Smith 327, which is in turn supported by the additional authorities cited

18 P. F. SMITH—16

[*Fulmer v.* Seitz.]

by the defendants in error in this case. There is no difference between this case and that, excepting that, if anything, this is stronger against the plaintiff than that. There, the alteration was made by the principal defendant himself, stating, at the same time, that he was authorized to make the alteration by the defendants; while here, the alteration was made by the plaintiff himself, and the principal defendant merely said it would be right, but did not say he was authorized to have it done. The grounds for the decision in Neff *v.* Horner are stated in the opinion, and need not be repeated here. But it is supposed that the case of Kountz *v.* Kennedy, 13 P. F. Smith 187, is opposed to this view, and it is cited as authority against it. That case is a very close one, and was decided doubtingly on its peculiar circumstances. One of our number expressly dissented, and I gave my own assent with hesitation. The case differs from Neff *v.* Horner and this case in several material respects. There, the plaintiff did not sue for or claim the interest under the alteration. Here, and in Neff *v.* Horner, he did. In Kountz *v.* Kennedy, the evidence showed that the alteration was evidently the result of a misapprehension, and as soon as the plaintiff discovered that the endorser had not authorized it, he had it taken out so as not to deface the note. As between him and Hunt, the drawer of the note, there was no difference of understanding, the latter having agreed to pay interest, and the note being altered to that effect by his clerk, when the plaintiff discovered that it did not correspond with their understanding. The plaintiff never made any claim of interest against the endorser, and had acted without a suspicion even of intended fraud. It was therefore held that the endorser was not affected by anything which had been done, the alteration being innocent and the correction being made immediately, as soon as it was discovered that he had not assented to the change. In the present case the parties to the note were all drawers, and stood in the same precise relation to it, so that the alteration as to the principal was an alteration of the direct contract to pay the note of each and every one who signed it; and on this contract the plaintiff brought his suit and insisted on his right to recover interest against all. Failing to show his right to recover against them, because of his failure to prove their assent to the alteration, he fell directly within the rule of policy which forbids the recovery of anything upon the altered instrument. These reasons furnish an answer also to the alleged error in refusing the plaintiff permission to strike out of the note and out of the *narr.* the added words, "Int., payable semi-annually." One who makes a voluntary and unauthorized alteration of a written contract, and insists upon it by going to trial to recover upon the altered state of the instrument, has no *locus pœnitentiæ*, which, on his failure to establish his right to recover, will enable him to undo

[Fulmer v. Seitz.]

the wrong at the trial, and to stand as one who has made an innocent mistake, and never has insisted upon his right to enforce it.

The sixth, seventh and eighth errors may be considered together. There is no evidence that the loan itself was made to all the drawers of the note directly either as principals or sureties, or that any undertaking was assumed by the sureties, other than the promise contained in the note itself. Nor did they receive any of the money lent by the plaintiff. Their liability arose, therefore, wholly upon the note, and not upon any express or implied promise, outside of it, to repay the money lent. It is evident, therefore, there was no ground upon which the court could submit to the jury the right of the plaintiff to recover jointly from all of the defendants the money lent, independently of the instrument by which the sureties bound themselves to pay it, and on that, as an altered writing, we have seen there can be no recovery. Upon the whole case we discover no error, and the judgment is therefore
                                                    Affirmed.