### KUPFERMAN *vs.* McGEHEE, trustee, *et al.*

1. A sale of goods to a trustee on his individual credit, the seller not knowing of the trust, but the goods being, in fact, bought and used for the trust estate, and being suitable and necessary therefor, and the trustee as such afterwards having given his negotiable note for the unpaid balance of the price, and the complainant having purchased the note, the complainant is the owner of the balance of the account represented by the note, and is a creditor of the trust estate.

2. The trustee, taking up the trust note by the substitution of his own individually, with a note on a third person given for rent, as collateral security, and afterwards collecting the rent and using it for the benefit of the trust estate, and both himself and the maker of the collateral note being insolvent, the trust estate is liable to the complainant in equity for the value of the rent so collected, or so much thereof as may be necessary to pay the trust note so taken up.

3. The note of the third person for rent, having been turned over by the trustee and received by the complainant, as collateral security, also, for an account party made and partly to be made, by the trustee as an individual, with the complainant, for supplies suitable and necessary for the trust estate, the same rule applies in respect to said account as the rule above announced with reference to the trust note. The complainant can proceed in equity against the trust estate for the amount of the account as well as for the amount of the note.

4. The remedy at law is less adequate and complete than in equity, there being complexity in the matter for adjustment, and a combination of trust and fraud ; also, a prayer for satisfaction out of income.

5. The bill need not charge that there is net income, or what amount will be required for the beneficiary of the trust. Creditors are not put aside for beneficiaries.

6. Charges sufficient as to suitableness of goods, that they were needed, and that the trust and the beneficiary took the benefit.

7. Prayer of the bill broad, but too much prayer will not exclude from appropriate relief.

Trusts. Equity. Debtor and creditor. Before Judge SIMMONS. Houston Superior Court. November Adjourned Term, 1878.

Reported in the opinion.

B. M. DAVIS; E. WARREN, for plaintiff in error.

DUNCAN & MILLER, for defendants.

BLECKLEY, Justice.

A bill making the following case was filed by an alleged ·creditor against a trustee, and his *cestui que trust* (husband and wife), and, on demurrer,was dismissed by the court. The trust was created on May 13th, 1867, by a deed of gift from the wife's father, one Belvin, to the husband, McGehee, conveying to him 632½ acres of land, in trust " for the sole separate use, behoof and benefit of the wife during her natural life, and at her death to be divided among her children and the heirs of their body, share and share alike ; and with this further provision, that in the event she should depart this life leaving no child or children, said land to revert to the estate of the donor if he is in life, to be subject to his ·control and disposition, and if he should not be in life, to revert to his surviving children and the heirs of the body of any deceased child or children who may have died leaving such heirs." A copy of the deed is made an exhibit to the bill. The trustee and his wife moved upon the land

16

immediately, and he has ever since been farming thereon, tenanting out portions of it, and furnishing his hands and tenants by purchasing supplies, using in all such transactions his own individual name, and not as trustee, but the trust estate claims and receives the whole benefit of the crops. In this manner he has bought mules, wagons, supplies, farming tools, and everything necessary for a completely equipped farm, all of which the defendants claim to belong to the trust estate. The trustee was and is insolvent. When he moved upon the premises he used all the property he owned, worth $5000.00, in purchasing stock, etc., therefor, which he claims as belonging to the trust estate. He gives to the management of the estate his entire time and attention, and charges the estate with nothing but his support. In pursuance of this general plan, he did business, during the years 1873, 4, 5, and 6 with one Picard, buying from Picard supplies, clothing, etc., used on the farm and by himself and wife ; all the articles so purchased were necessary to carry on the farm, and were necessaries furnished the trust estate, and were furnished by Picard on the credit of the property, without notice of there being any trust. To the bill is annexed a copy of an account, running from December, 1873, to August, 1876, setting forth the articles, chiefly dry goods and groceries, with their prices, the whole amounting to between one and two thousand dollars, with various sums credited. This account was kept with the trustee as an individual, and not in his trust character. On settlement in 1876, it was found that the balance due Picard was $323.60, for which the trustee gave his note, as trustee, payable to Picard or bearer, and due in the fall or winter after it was made. This note, in the due course of trade and before maturity, became the property of Kupferman, the complainant. Afterwards, the trustee proposed to take up the same by giving his individual note, due the next fall, and secured by good and sufficient collaterals. The proposition was accepted, and on March 17th, 1877, the trust note was surrendered to the trustee, and his

individual note was taken by the complainant for the principal and interest, amounting to $362.43, due November 1st, 1877. At the same time, as collateral security for the payment of this note, and also as collateral security for certain supplies for the farm, that had been and were to be furnished during that year by complainant to the trustee, the latter, as an individual, transferred and assigned to the complainant a note, purporting to be for rent, made by one Kendrick to the trustee and payable to him, as an individual, or bearer, for ten bales of cotton, and due November 1st, 1877.

In compliance with agreement, complainant furnished supplies of money, provisions, clothing, etc., amounting to $346.17, of which $260.48 was paid. An account of the articles is annexed to the bill, which account seems to debit the trustee merely as an individual. It opens in January and closes in November, 1877, and sets forth each item, with prices, etc. All of these supplies were furnished to and used upon the trust estate, and were necessary therefor. The complainant was induced to take the individual note of the trustee in lieu of the prior note signed by him as trustee, and to receive the collateral note of Kendrick, and to advance supplies on the faith of the same, by the assurance of the trustee that the collateral was a good and valid rent note, and would be paid at maturity. It was, however, not a good and valid rent note as represented; Kendrick did not owe the trustee. individually, but if he owed rent at all it was to the trust estate, and the trustee has since so informed complainant. When Kendrick's rent became due the trustee collected it and applied it to the use of the trust estate; both the trustee and complainant distrained for it, and the trustee contested and litigated the validity of the complainant's claim. Kendrick was insolvent when he made the note, and is still insolvent. " The whole" was a fraudulent scheme to defraud complainant and get from him the original note which was against the trust estate, and to get the advances which he made during the year

1877, without giving him any equivalent therefor. The trustee is insolvent—a bankrupt, and unless the complainant can hold the trust estate, or the personal property thereon, liable, he is without remedy. The supplies furnished all went to the trust, were necessary, and were enjoyed by the beneficiary, who claims the crops and proceeds produced thereby.

The bill prays for an injunction restraining the trustee, as such and individually, from disposing of any of the personal property on the farm, and from selling or disposing of any of the rent notes he may hereafter receive, or any of the crops; also, that complainant have a decree declaring the personal property on the farm to be the property of the trustee individually, and not the property of the trust estate; that the complainant also have a decree, both against the trustee and against the trust estate, for the amount due him by note and account, as charged in the bill; that a receiver be appointed to take possession of the trust estate and rent out the same, and after paying one-half of the rents, or so much as may be necessary, for the support of the wife, to pay over to the complainant the balance until his demand shall be fully discharged; that the complainant may have a decree against the trust estate for the amount collected by the trustee from Kendrick, and for general relief.

The defendants demurred to the whole bill on numerous grounds:—1st. No equity. 2d. That as to the account of Picard, it does not appear that the complainant has any title or interest therein, but the same belongs to Picard. 3d. Full and complete remedy at law. 4th. No right to any of the relief prayed for, and no decree could be rendered which could be enforced without destruction to the estate of the beneficiary for life. 5th. No liability of the trust estate for the collections made by the trustee on the Kendrick note. 6th. The prayer improper, because for a decree declaring the personal property to belong to the trustee individually, and also that the same be sold to satis-

fy the complainant's demands.    7th. The net income of the
trust estate not alleged, nor what amount is needed for the
support and maintenance of the beneficiary, nor that the
goods sold were for her benefit and necessary therefor :
and 8th, the trust estate is only for the life of the benefi-
ciary, and the prayer is that it be placed in the hands of a
receiver until the complainant's debt is discharged.

Did the court err in sustaining the demurrer, and dis-
missing the bill?

1. While the account with Picard, so far as it shows the
kind, quantity, nature and prices of the goods furnished, is
in the case, and perhaps material to uphold a part of it,
that it was made with Picard is of no consequence, for the
reason that the trustee gave his note, as trustee, for the bal-
ance due on the account, which note was negotiable and be-
came the property of the complainant.    The trustee could
legally give that note if it really represented a trust debt.
56 *Ga.*, 642.    Inasmuch as the note covered the balance
due on the account with Picard, and the complainant be-
came the owner of the note, he became the owner of such
balance, and thus Picard's title is in him.    That the account
was against the trustee individually, did not prevent it
from being afterwards treated as a debt of the trust estate,
if the articles embraced in it were really purchased for the
use of that estate, and were adapted to its use, and if the
estate took the benefit of them.    The bill alleges that Picard
sold in ignorance of the trust, but on the faith of the pro-
perty covered by the trust deed.    See 9 *Ga.*, 223 ; 60 *Ib.*,
152.    By means of the note, whatever rights Picard had,
passed to the complainant.    The complainant, therefore, so
to speak, absorbs Picard.

2. We thus find the complainant apparently a creditor of
the trust estate by note, on March 17th, 1877, at which
time the trustee came forward to make payment.    He did
so by substituting his own note, as an individual, with the
note of Kendrick, payable to himself or bearer, and not
then due, as collateral.    If there was no fraud, this was a

discharge. But the bill alleges that there was fraud. It alleges that Kendrick was insolvent; that, though his note was payable to the trustee, individually, he owed him nothing, but that the note represented a debt for rent to the trust estate, and that afterwards the trustee actually collected the rent, and that the trust estate had the benefit of that collection. This would be of no consequence if Kendrick were solvent, for, as the complainant took the rent note as collateral before due, the payment of the rent to the trustee after the transfer would be no obstacle to collecting it again from him by the complainant on the note. With Kendrick insolvent, however, the rent which he paid to the trustee, and of which the trust estate had the benefit, is a clear loss to the complainant, to the extent of the amount of his insolvent note on the trustee, individually, and a clear gain to the trust estate. To allow the trust estate to retain this rent, and also to treat the trust note as paid off, would be contrary to equity and good conscience. We thus see there is equity in the bill as to the Picard note.

3. Is there any equity in the bill as to the account in favor of the complainant himself? That account commenced in January and closed in November, 1877. The Kendrick note for rent was left as collateral security in respect to it also. A part of the account arose before March time when the collateral was turned over, and a part afterwards. The whole account was kept with the trustee as an individual, but it is alleged in the bill that the trust estate had the benefit of it; that the articles were necessary, etc. The form of keeping the account is not conclusive against the liability of the trust estate. See 9 *Ga.*, *supra*. And what has been said under the preceding head, in respect to the collateral, is as applicable to the account as to the note of the trustee which was taken up when the note of Kendrick was put in pledge. There is thus equity as to the account also.

4. Trusts are children of equity; and in a court of equity they are at home—under the family roof-tree, and around

the hearth of their ancestor. A court of law may entertain them; but when the case is complicated, especially when it has a flavor of fraud, equity will not banish them, and remit the parties to another forum. Equity delights in protecting trusts, and it delights no less in obliging trustees and trust estates to render to all men their due. A trust deed is no commission to inflict wrong on a single human being. Trust farms and plantations must pay their way with the same scrupulous fidelity to legal and moral obligations, as other establishments. Those who live upon capital clothed with a trust, must be content to consume the net income; they cannot be allowed to enjoy the gross income, and leave honest creditors unpaid. Unreasonable, as well as unjust, would it be to hold, that because what remains after paying expenses will be insufficient to maintain beneficiaries comfortably, expenses must be left unpaid. Equity, on the contrary, will take hold of income and if necessary appropriate the whole of it, for the time being, to clear arrearages. If heretofore expenses have been neglected, there is the stronger reason for attending to them now, and attending to them effectually. And to adjust the relations between income and expenses is more appropriate to a court of equity than to a court of law. In moving against trust estates in behalf of creditors, courts of law, acting merely as such, strike mainly at the *corpus*, (Code, §3377, *et seq.*), but equity, sparing the *corpus*, will control and administer the income to liquidate debts properly incurred for expenses. 9 *Ga.*, 223. This difference of method in the two courts fits the circumstances of the present case, and furnishes, of itself, a sufficient ground for retaining the bill instead of sending the complainant into a court of law. The expenses sought to be recovered have all been incurred in furnishing necessaries to the life-tenant, or in aiding to produce income for her benefit. She is still, as heretofore, the owner of the entire income which the trust estate yields. It is her interest alone that the complainant's demand is a charge upon, or could, in any court, be allowed to reach. As the

estate in remainder or reversion has not been served in any way by the consideration for which the debt to the complainant was incurred, the interest of the reversioner or remaindermen cannot be made to contribute anything to the payment of the debt. The whole burden rests upon the tenant for life, and must be discharged either out of the income, or by a sale of the *corpus* for the term of her life, or for some term of years short of that period. Doubtless the most judicious course will be to leave the *corpus* unimpaired, and satisfy the creditor out of the income, should it prove sufficient. That the superior court as a court of law might, in a manner, afford and administer this equitable remedy, is true (see *Moore vs. Lampkin*, decided during the present term), but equity will not drive a suitor elsewhere to obtain equitable relief. Code, §§3082, 3095.

5. The demurrer suggests as a defect in the bill that the amount of net income is not alleged, nor the amount which is requisite for the support and maintenance of the beneficiary; it also suggests that no decree could be made and enforced without working destruction to the estate of the life-tenant. If the complainant's demand is a just and proper charge upon the income, it is a mistake to suppose that the creditor must be postponed in order that the tenant for life may have continuous and comfortable support. If she has heretofore exceeded her net income, she will have to submit to some degree of stint, temporarily, until arrearages of debt can be cleared. Equity has a mode of dividing short incomes, and in that way doing something for both creditors and beneficiaries. 60 *Ga.*, 506. The complainant is not supposed to know what the income of the trust estate is, or how much the beneficiary needs. These things can be inquired into at the hearing to guide the court in rendering a decree. And suppose there is at present no net income, perhaps there will be hereafter, and if so, the decree can take hold of it when it accrues. Or suppose the trustee should prove unable to make the plantation yield anything beyond current expenses, perhaps the court, by appointing

a receiver, could better the management and increase production. All these things can be settled in the further progress of the case without starting with more averments in the bill than it contains. It furnishes a good foundation to work upon. The case of *Johnson vs. Redd*, 59 *Ga.*, 621, was cited in argument as an authority for holding off creditors until the beneficiary is first provided for out of the income. But in that case there were two estates, and a debt incurred for one (which was not covered by a trust) came against the other (which *was* covered by a trust) for satisfaction. Here, on the contrary, the identical estate which incurred the debt is called upon to pay it. Grant, if you please, that it would wholly absorb the estate, so far as the tenant for life is concerned, why should it not be absorbed? Debtors, generally, are not spared, except by taking the homestead or claiming legal exemptions, because their estates will be absorbed. Is the debt of a trust estate, if it be a proper debt and binding on the trust, less obligatory than debts in general?

6. The demurrer further suggests that the bill does not sufficiently charge that the goods sold were for the benefit of the tenant for life, and necessary. We are cited on this head to *Gaudy vs. Babbitt*, 56 *Ga.*, 640, which was a case at law upon the promissory note of a trustee, and no trust instrument or terms of trust were set out in the pleadings. Moreover, the suit was aimed at the *corpus*, and not, as here, at the income. Here, too, the trust deed is exhibited, and the bill alleges over and over, that the goods were necessary to the trust estate and for the beneficiary, and that the estate or the beneficiary took the sole benefit. The goods were purchased in active management of the trust business, and we think it can be collected from the bill that they were suitable to the circumstances and condition of that business and of the beneficiary, The trustee so treated them, and the allegations of the bill are sufficient to admit evidence as to whether he was correct. In *Gaudy vs. Babbitt*, the evidence was as deficient as the pleadings, or more so.

7. Finally, the demurrer signifies some objection to the prayer of the bill. There is, indeed, a profusion of prayer. Not only earnestly and devoutly does the complainant pray, but he prays comprehensively. He wants relief, and much of it. He seems to ask for everything that he can think of, and then to throw in a general petition to cover oversights. Over-zealous, perhaps, he hurries into some inconsistencies, and possibly no court can grant all he begs for. But a suitor is not to be turned out of court for his much praying. Here the bill was dismissed. The supplicant was condemned to perpetual silence.

Judgment reversed.