## McCOY v. McCOY.

No. 1194.   Opinion Filed November 18, 1911.

(121 Pac. 176.)

1.   **TRUSTS—Agreements Relating to Realty—Statute of Frauds.**
     Where a petition contains the averment that plaintiff and two other parties entered into a verbal agreement, by which it was agreed and understood, by and among the three parties, that each would contribute one-third of the purchase price of a tract of land, and that the deed to same should be made to the three parties jointly, and that acting upon such agreement, each party contributed his part of the purchase money, and that the deed when executed, instead of being made to the three parties jointly, was made to the two parties other than plaintiff, and that such variance between the deed and the agreement was due to the intrigue and fraud of one of the joint grantees named in the deed, **held,** such an agreement is not within the statute of frauds, and such petition does not fail to state a cause of action by reason of the alleged contract being in parol.

2.   **SAME—Resulting Trusts—Elements—Admissibility of Evidence.**
     Where three parties enter into a verbal agreement whereby it is agreed and understood, by and among them, merely that together they will purchase a certain tract of land, each paying one-third of the purchase price, and that the deed to such land shall be made to the three parties jointly, and that each party shall own and hold an undivided one-third interest therein, such an agreement is not one which will constitute ''a contract creating an express trust for the sale of real estate,'' nor is it such an agreement as

from its terms would imply an intent to create a trust. But if, through mistake or fraud, after each party acting upon such agreement has paid his portion of the purchase price, the deed to such land be made to two of the parties jointly, the other party to the agreement not being mentioned in the deed, then the law presumes a trust to result from such fact in favor of the party whose name is left out of the deed. And in a suit to have a resulting trust declared in favor of the party whose name is left out of the deed, oral testimony is admissible to prove the parol agreement.

3.  SAME — "Express Trust" — "Resulting Trust" — Elements. To constitute an express trust there must be some act on the part of of the *cestui que* trust expressive of intent to create a trust and to designate some one as trustee. A resulting trust arises where, from the condition of facts existing, regardless of any intent on the part of the beneficiary, the law presumes a trust.

4.  SAME—Administration—Jurisdiction of Law or Equity. The subject of trusts and the control and regulation of trust estates are not properly cognizable by courts of law, but are exclusively within the jurisdiction of courts of equity.

5.  JURY—Right to Trial by Jury—Legal or Equitable Proceedings. In all civil actions for the recovery of money or for the recovery of specific real or personal property every issue of fact arising from the pleadings must be tried by a jury, unless a jury be waived by both parties to the action, or a reference be ordered as prescribed by statute. All other issues of fact (except those arising in actions for the recovery of money or specific real or personal property) and all issues of fact arising in equity proceedings may be tried by the court subject to its power to submit the issues to a jury or order a reference.

6.  TRUSTS—Nature. The mere word "trust," in its literal significance, implies the nurturing and sheltering of a sacred confidence, and out of this literal meaning has grown a legal significance, which, though broader in scope and laden with more material functions, has lost none of its elements of sanctity.

(Syllabus by Harrison, C.)

*Error from District Court, Canadian County; J. J. Carney, Judge.*

Action by Charles E. McCoy against John L. McCoy and others. Judgment for plaintiff, and defendant John L. McCoy brings error. Affirmed.

This is an action begun in the district court of Canadian county, March 4, 1907. Charles E. McCoy sued John L. McCoy, James N. Bleigh, and Fred H. Wright to have John L. McCoy

declared a resulting trustee, holding for plaintiff an undivided one-third interest in a tract of land containing 160 acres situated in Canadian county, Okla. The petition alleged that the plaintiff and John L. McCoy, a brother, and James N. Bleigh, a neighbor, had entered into a verbal agreement whereby each was to contribute one-third of the purchase money toward buying a tract of Indian land, which at the time of the verbal agreement was being advertised for sale by the Department of the Interior. The facts are that each party contributed a part of the purchase money. That the two McCoys and Bleigh resided in West Virginia, and that the land in question was bid in by one W. W. Morrison, a friend and neighbor of the three parties above named, but who then resided in Canadian county, Okla. Part of the money was sent by checks and drafts from Virginia and part of it paid in person by Charles E. McCoy, who was in Oklahoma on a visit, or an inspecting tour, at the time the land was sold. Morrison, the friend of the two McCoys and Bleigh, and acting for them, bid in the land and paid the money to the department for these parties; but, instead of having the deed or patent issued to the three parties jointly, it was issued to John L. McCoy and James N. Bleigh jointly, Charles E. McCoy being left out of the deed or patent from the government. Charles E. McCoy, claiming that he was entitled to a one-third interest in the land by virtue of the agreement and of his contributing one-third of the purchase money, upon the failure and refusal of his brother, John L. McCoy, to join with Bleigh in the execution of a conveyance to Charles E. McCoy, of the one-third interest claimed, he, Charles E. McCoy, brought this action against John L. McCoy, who, at the time of the action, having previously purchased the interest of Bleigh, owned all the tract; that is, had the record title to the entire tract, subject to a mortgage lien created by John L. McCoy in favor of defendant Bleigh and assigned to the defendants James N. Bleigh and Fred H. Wright, who failed to appear as parties to the action, but defendant John L. McCoy appeared by attorney, having filed his separate answer to the petition, and demanded a trial by jury. The plaintiff objected

on the ground that the issues to be determined were of an equitable nature purely, and were not proper questions for a jury. A jury had been called in the case, but not impaneled and sworn to try the case, and had been sent out of the courtroom while the court heard arguments on the question whether the defendant was entitled to a jury as a matter of right. Having determined that the action involved equitable issues, the jury was recalled and dismissed and the case was tried by the court. The plaintiff, Charles E. McCoy, and defendant James N. Bleigh and the party W. W. Morrison, who had bid in the land, were present at the trial and testified orally in behalf of the plaintiff. John L. McCoy was not present to testify orally, but his deposition, which had been taken in West Virginia, was read in evidence in behalf of the defendant John L. McCoy. The court rendered judgment in favor of plaintiff decreeing that defendant John L. McCoy should, within the time specified in the decree, execute a proper deed conveying to Charles E. McCoy an undivided one-third interest in the tract of land in question, and in the event of the failure or refusal of John L. McCoy to execute such deed of conveyance, then that the decree itself should vest said Charles E. McCoy with an undivided one-third interest in the land. Motion for new trial being overruled, the defendant John L. McCoy brings the cause here, complaining, first, the petition does not state facts sufficient to constitute a cause of action; second, the court erred in refusing the defendant a trial by jury; third, the court erred in permitting plaintiff to introduce parol evidence over the objection and exception of the defendant to prove the verbal contract which plaintiff claimed to have made between the parties; fourth, the judgment is contrary to law; fifth, the judgment is not supported by the pleadings and the evidence; sixth, the court erred in overruling the motion of defendant for a new trial.

*W. M. Wallace,* for plaintiff in error.

*R. B. Forrest,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). There are three principal propositions involved herein, a determination of which, in our opinion, properly disposes of all the material features in the case. First, does the petition state a cause of action? Second, was defendant as a matter of right entitled to a jury? Third, was parol testimony admissible to prove the alleged verbal contract?

Out of the first proposition arises the question whether this is an action for the specific performance of a verbal contract creating an express trust for the sale of real estate, or whether from the facts alleged, if true, a resulting trust was created by operation of law.

The material substance contained in the petition is: That on or about the 12th day of May, 1904, the plaintiff, Charles E. McCoy, and the defendants John L. McCoy and James N. Bleigh, entered into a verbal agreement whereby it was agreed and understood among the three parties that each would contribute one-third of the purchase price necessary to pay for a tract of Indian land situated in Canadian county, Okla., which was then being advertised for sale by the Department of the Interior. That, pursuant to the contract so made among the three parties, each contributed a portion of the purchase money, which was paid to one W. W. Morrison, who, acting for all of said parties, was to bid in said tract of land for all said parties, and to pay the money thus contributed by said parties to the government for said land. That the understanding and agreement was, among the parties and between the parties and W. W. Morrison, that the deed or patent from the government should be made to the three parties jointly. That the purchase price of the land in question was $1,020, of which amount the plaintiff, Charles E. McCoy, contributed $500, the defendant James N. Bleigh, $340, and the defendant John L. McCoy, $180; and that afterwards the plaintiff, Charles E. McCoy, contributed $2.50 to the officers as fees for preparing the instruments. That, after the money had been contributed and the land bid in by said W. W. Morrison, instead of having it conveyed or instead of having the deed made

to the three parties who had contributed the purchase money, he had, at the request and direction of the defendant John L. McCoy, instructed the department to make conveyance to James N. Bleigh and John L. McCoy. That after discovering that plaintiff had been left out of the deed or patent he requested defendants Bleigh and John L. McCoy to execute to him a deed conveying an undivided one-third interest in the land, which at the time they promised to do, and at divers times promised to do, but from time to time failed to do. That at all times the defendant James N. Bleigh acknowledged the interest of plaintiff in the land, and at different times joined with plaintiff in requesting the defendant John L. McCoy to make the conveyance. That the defendant John L. McCoy at no time prior to September 23, 1904, had positively declined to make the deed asked for; but that upon said date formal demand having been made for the deed, he positively declined to execute the same. That about October 6, 1906, the defendant Bleigh sold his interest in the land to the defendant John L. McCoy for a consideration mentioned in the deed, a part of which was paid in cash, the residue in a note for $300, to secure the payment of which John L. McCoy executed a mortgage to James N. Bleigh on the tract of land. Afterwards, on October 15, 1906, Bleigh assigned this note and mortgage to the defendant Fred H. Wright. That at the time of the filing of this suit the record title to said tract, as evidenced by deed, showed to be wholly in John L. McCoy, subject to the mortgage lien executed to Bleigh and assigned to Wright, which then appeared unsatisfied of record. The petition states further that the plaintiff had never in any manner been reimbursed for the money advanced by him towards the purchase price of the land in question. That the defendant John L. McCoy not only refused to execute a deed to plaintiff conveying him a one-third interest in the tract, but asserted the claim that he, John L. McCoy, was the absolute owner of the said tract and that plaintiff had no interest therein; and that said John L. McCoy, at the time of the institution of the suit, was then a resident of West Virginia, and was attempting and endeavoring to sell and dispose of the tract of

land in order to defraud plaintiff of his interest therein. Wherefore the plaintiff demanded judgment against each of said defendants; that said John L. McCoy be adjudged, declared, and decreed to hold an undivided one-third interest in said tract as trustee for the use and benefit of the plaintiff, and that he be required to execute and deliver to plaintiff a deed of conveyance to an undivided one-third interest, within a reasonable time to be fixed by the court, and upon his failure so to do that the. court decree a one-third interest in said tract to plaintiff, and that such decree be made to operate as a conveyance to plaintiff of the interest claimed in the tract, and that for the portion of money which plaintiff had advanced toward the purchase of said tract, over and above the sum of $342.50, he be declared to have a lien against the interest of defendant John L. McCoy in said land, until the same is paid, and that the equities of the several parties to this action be ascertained and determined, and for such other and further relief as might be proper and equitable in the premises.

From the averments in the petition we cannot see where, from the verbal agreement alleged, there was any express trust created, or in fact a trust of any character, as contemplated by the term "trust." The agreement alleged was not that each party should contribute one-third of the purchase price of the land and that the deed should be executed to John L. McCoy and James N. Bleigh and that they should hold a. one-third interest in the title to same in trust for plaintiff, nor does the alleged agreement contain any intimation or justify any inference whatever that any such trust was created or intended to be created by the parties to the agreement. It is alleged that they agreed and understood among themselves that each would contribute one-third of the purchase money, send it to Morrison, to be paid by him for the land, and that the deed should be made jointly to the three parties to the agreement. There is absolutely nothing in the alleged agreement that would any more warrant the conclusion that John L. McCoy and James N. Bleigh, or either of them, were to be made trustees for Charles E. McCoy, than that Charles

E. McCoy was to be made a trustee for them; but it appears absolutely clear from the agreement alleged that there was no intention in the minds of the parties thereto to create a trust of any kind in anyone's favor. Therefore, the authorities on express trust cited by counsel for plaintiff in error are not in point here. Counsel for plaintiff in error contends that this was a verbal contract creating an express trust for the sale of real estate and therefore came within the statute of frauds, and, assuming such position to be true, cites authority in support of the doctrine that all verbal contracts, creating an express trust for the sale of real estate, come within the statute of frauds and are void. While we concur in the soundness of the authorities cited by counsel, we cannot agree with him in the correctness of his position. The allegations in the petition are clear and specific as to the intent of the parties, and that the issuance of the deed to Bleigh and John L. McCoy was not the result of the agreement among them that the deed should come to these parties, but was the result of the insistence and connivance of John L. McCoy and the deceptions he practiced on W. W. Morrison. Other facts are alleged in the petition which warrant the inference that, if such allegations are true, then such acts on the part of John L. McCoy were done with fraudulent purpose. We cannot hold, therefore, that this is an action for the specific performance of a verbal contract creating an express trust for the sale of real estate.

Express trusts are not defined by our statutes; that is, the statutes fail to prescribe or to define just what acts are necessary on the part of the *cestui que trust* in order to create an express trust, but presumably look to and adopt the meaning given to the term by the commentators and courts of equity.

"Express trusts are also called direct trusts. They are generally created by instruments that point out directly and expressly the property, persons, and purpose of the trust; hence they are called direct or express trusts in contradistinction from those trusts that are implied, presumed, or construed by law to arise out of the transactions of parties." (Perry on Trusts, vol. 1, sec. 24.)

"Express trusts are those which are created in express terms in the deed, writing, or will. The terms to create an express trust will be sufficient if it can be fairly collected upon the face of the instrument that a trust was intended." (Bouvier's Law Dictionary.)

"Any agreement or contract in writing, made by a person having the power of disposal over real property, whereby such person agrees or directs that certain real estate be held or dealt with in a particular manner for the benefit of another, raises a trust." (*Carter v. Gibson*, 29 Neb. 334, 45 N. W. 637, 26 Am. St. Rep. 387.)

" 'Express' trusts: A trust created in express terms in the deed, will, or other writing"—citing 1 Story, Eq. sec. 64; " 'Express' trusts are raised and created by the acts of the parties; 'implied' trusts, by act or construction of the law." (Anderson's Law Dictionary.)

"Express trusts are those which are created by the direct and positive acts of the parties by some writing, or deed, or will." (*Caldwell v. Matthewson*, 57 Kan. 262, 45 Pac. 615.)

—quoting from 2 Story, Eq. Jur. (13th Ed.) 283. Also Flint on Trusts, vol. 1, and Am. & Eng. Enc. (2d Ed.) vol. 28, and notes and authorities cited.

In order to constitute an express trust, therefore, there must be some act on the part of the *cestui que trust* expressive of an intent to create a trust and to make a designated party trustee thereunder. Acting upon and aided by this theory of what constitutes an express trust, our statutes define what trusts relating to real estate are valid. Comp. Laws 1909, sec. 7267.

"No trust in relation to real property is valid unless created or declared: (1) By a written instrument, subscribed by the trustee (trustor) or by his agent thereby authorized in writing; (2) by the instrument under which the trustee claims the estate affected; or, (3) by operation of law." (St. Okla. 1890, sec. 4186.)

Section 7270 provides for what purpose express trusts may be created:

"Sec. 7270. Express trusts may be created for any of the following purposes: (1) To sell real property and apply or dispose of the proceeds in accordance with the instrument creating the trust. (2) To mortgage or release real property for the bene-

fit of annuitants or other legatees, or for the purpose of satis-
fying any charge thereon. (3) To receive the rents and profits
of real property, and pay them to or apply them to the use of
any person, whether ascertained at the time of the creation of the
trust or not, for himself or for his family, during the life of such
person, or for any shorter term, subject to the rules of article
2 of this chapter. (4) To receive the rents and profits of real
property and to accumulate the same for the purposes and within
the limits prescribed by the same article." (St. Okla. 1890, sec.
4189.)

From the above statutes, aided by the authorities herein
cited, we may clearly comprehend what is meant or contemplated
by the term "express trusts." *Fulmer v. Seitz,* 68 Pa. 237, 8 Am.
Rep. 172; Story's Eq. vol. 2, 562; vol. 1, 338; Pomeroy's Eq.
vol. 2, secs. 1008, 1030, 1031, and notes; Perry on Trusts, secs.
137, 226; Flint on Trusts, pp. 65, 66; Am. & Eng. Enc. vol. 15,
title "Implied Trusts"; *Gardner v. Randell,* 70 Tex. 453, 7. S. W.
781; *Reed v. Howard,* 71 Tex. 204, 9 S. W. 109; *Parker v. Coop,*
60 Tex. 112.

It is plain from the authorities above cited that the facts
averred in the petition do not constitute an express trust either
in writing subscribed by the trustee or trustor, or by the instru-
ment under which the trustee holds the land, or by the verbal
agreement alleged in the petition, and could not, therefore, be
held to be a suit for specific performance of a parol agreement
for the sale of real estate. Hence, if there is a trust of any
class involved in this case, it is one arising from the facts and
becomes a trust by operation of law. If, from the condition of
facts existing, a trust arises or results by operation of law, then
it may be valid whether the agreement from which the condi-
tion arises be in writing or in parol; and if the facts alleged in
the petition are such that from them the law presumes a trust,
or such that a trust results therefrom, it becomes one which, by
the authorities, is universally treated as an implied trust or a re-
sulting trust and is not within the statute of frauds. Our stat-
utes define what acts constitute a resulting trust. Section 7268,
Comp Laws 1909:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." (St. Okla. 1890, sec. 4187.)

We think the facts alleged in the petition take the case out of the statute of frauds, and bring it clearly within section 7268 of our statutes, and that by so doing constitute a cause of action.

The proposition as to whether parol testimony was admissible to prove the verbal agreement is well settled by the authorities above cited on the question as to whether implied trusts come within the statute of frauds, and this case disclosing a condition of facts from which a trust results by presumption of law, and, there being a probable element of fraud in the chain of circumstances which brings about this condition, parol testimony to prove the verbal agreement was clearly admissible. Story's Eq. Jur. (13th Ed.) 857; 2 Starkie, Ev. title "Parol Evidence"; 1 Phillips, Ev. c. 10; 1 Greenleaf, Ev. sec. 266; Enc. of Ev. vol. 9, title "Parol Evidence"; Underhill, Ev. 312; 1 Perry on Trusts, sec. 85; Flint on Trusts, title "Resulting Trusts"; Pomeroy's Eq. Jur. secs. 1040, 1041.

The remaining proposition, "whether the defendant was entitled to a jury as a matter of right," involves a problem for a complete solution of which the courts of our state so far have not been called upon, and in order to a solution of which necessitates at least a partial step into a heretofore untrodden path. This we take with the statutes as our compass, guided by such light as may be thrown thereon by the precedents of other jurisdictions.

Logically, there are two features of this question to be settled: First, whether the subject of trusts is exclusively cognizable by courts of equity; second, whether, in proceedings in equity, issues of fact may be determined by the court without the aid of a jury. An affirmative answer to these two features of the main proposition fully determines the entire question whether a litigant as a matter of right is entitled to have every issue of fact arising from the pleadings determined by a jury. In answer to the first feature of the proposition, the authorities have so uni-

versally conceded that courts of equity have exclusive jurisdiction over the subject of trusts that it seems a waste of time to refer to them, and, but for the second feature involved, we should not even seemingly recognize it as in the least debatable.

The mere word "trust," in its literal significance, implies the nurturing and sheltering of a sacred confidence. Out of this literal meaning has grown a legal significance which, though broader in scope and laden with more material functions, has lost none of its elements of sanctity; and courts of equity, because of their expansive powers and sensitive discernments in matters of natural justice, have ever been recognized as the foster home from which trusts derive their existence and to which they turn for succor and protection. And to invade this sacred province and destroy this parent roof might be fraught with direst consequence to the future adjustment of natural rights.

It is possible and even practicable to provide adequate rules of procedure for the adjudication of every phase of natural justice, but to attempt to enumerate and define every natural right which might arise from the intricate interlineations of human affairs would be a task as hopeless as the numbering of the ocean sands. And, in recognition of this principle, both the judicial and the legislative branches of government have allowed these questions to remain where they properly belong—in the courts of equity. It was doubtless in recognition of this principle that our own Legislature has failed to provide a remedy at law in such cases.

In support of these conclusions we herein cite a few of the many authorities on the subject. Story's Eq. Pleading; Story's Eq. Jur.; Perry on Trusts; Pomeroy's Eq. Jur.; Flint on Trusts; Am. & Eng. (2d Ed.) vols. 15, 28; Enc. P. & P., vols. 11, 22; and authorities cited in the text.

"The whole subject of trusts is one of equitable jurisdiction, well defined, and the general practice under the various branches has been of long standing both in England and in this country, and has become a part of the remedy itself, and no departure therefrom can be had except authorized by statute or by the rules

of court clearly making the change." (*Matter of Kingsbury,* 51 Mich. 623, 17 N. W. 208.)

"Cases of trust fall within the equity jurisdiction of the federal courts." (*Oelrichs v. Spain,* 15 Wall. 211, 21 L. Ed. 43.)

"Courts of equity have always claimed and exercised exclusive jurisdiction in cases of trusts and over the conduct of those appointed to execute them. This has never been disputed ground. No other tribunal can so properly direct the manner of executing them, or inquire into and correct abuses where there has been, or is likely to be, mismanagement by the trustees." (*Baring v. Willing,* 4 Wash. C. C. 248, Fed. Cas. No. 985.)

"Trusts are children of equity; and in a court of equity they are at home, under the family rooftree, and around the hearth of their ancestor. A court of law may entertain them; but when the case is complicated, especially when it has a flavor of fraud, equity will not banish them and remit the parties to another forum. Equity delights in protecting trusts, and it delights no less in obliging trustees and trust estates to render to all men their dues." (*Kupferman v. McGehee,* 63 Ga. 256.)

This we think sufficient on this question.

The next or second feature of the question, "whether all issues of fact are as a matter of right to be tried by a jury," depends upon our statutes and the construction given similar statutes in other jurisdictions. The Organic Act of the territory of Oklahoma conferred equity powers upon the district courts provided for therein. The territorial Legislature adopted the Kansas Code of Civil Procedure, by which act it adopted the meaning given thereto by the courts of Kansas. The statutes of Oklahoma Territory were adopted by provision of the Constitution of the state of Oklahoma, hence the construction placed on such statutes by the Kansas courts are at least strongly persuasive, if not absolutely controlling.

In the case of *Woodman v. Davis,* 32 Kan. 344, 4 Pac. 262, which was an action by Davis against Woodman to quiet title to certain real estate and to recover on an account for money, the court held that the petition therein stated five causes of action, four of which were in equity, and the fifth presenting an issue of fact for the recovery of money. Chief Justice Horton, in rendering the opinion, said:

"It is. next urged that the court erred in refusing to submit the whole case to the jury, and therefore erred in trying the fifth cause of action by the jury, and refusing to submit the first four to the jury. No error was committed in this action. The first four causes of action were in equity, and in such a case the court has the power, without giving any reasons therefor, to send any portion of the issues which it chooses to the jury to be tried, and to require the jury to make a separate finding upon each of the issues; and the court may try all the issues in the case itself. A jury trial cannot be demanded as a matter of right in suits in equity"

—citing *Kimball v. Conner*, 3 Kan. 432; *Carlin v. Donegan*, 15 Kan. 496, 497; *McCardell v. McNay*, 17 Kan. 433; *Huoston v. Cloud Co.*, 19 Kan. 396.

In the case of the *City of Emporia et al. v. Soden*, 25 Kan. 588, 37 Am. Rep. 265, wherein Soden had brought an action against the city for injunction, Mr. Justice Brewer, who rendered the opinion of the court, in discussing the errors assigned on appeal, said:

"And, first, it is insisted that the court erred in refusing a jury. This was an action on injunction—an equitable action—and neither party had a right to a jury. Of course, in such an action questions of fact may arise, and the court has power to submit those questions to a jury; but neither party has a right to a jury. Whether one shall be called or not rests in the discretion of the court"—citing "*Hixon v. George*, 18 Kan. 256; *Carlin v. Donegan*, 15 Kan. 496,"

—and concludes:

"And, generally, in a case like this, we think the wiser course is to refuse a jury."

Also, in *Maas et al. v. Dunmyer*, 21 Okla. 434, 96 Pac. 591; *Conran v. Sellew*, 28 Mo. 320; *Weil et al. v. Kume*, 49 Mo. 158; *Stilwell v. Kellogg*, 14 Wis. 461; *Wynkoop v. Cooch*, 89 Pa. 450; *Hauser v. Mann*, 5 N. C. 410; Enc. P. & P. vol. 11, pp. 607-621; volume 22, Enc. P. & P., p. 131.

Our statutes define what issues must be tried by a jury and what issues may be tried by the court. Comp. Laws 1909, sec. 5781:

"Issues arise on the pleadings, where a fact or conclusion of law is maintained by one party and controverted by the other.

There are two kinds. First, of law. Second, of fact." (St. Okla. 1893, sec. 4151.)

Section 5782:

"An issue of law arises upon a demurrer to the petition, answer, or reply, or to some part thereof." (St. Okla. 1893, sec. 4152.)

Section 5783:

"An issue of fact arises: First, upon a material allegation in the petition, controverted by the answer; or, second, upon new matter in the answer, controverted by the reply; or, third, upon new matter in the reply, which shall be considered as controverted by the defendant without further pleading." (St. Okla. 1893, sec. 4153.)

Section 5785:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided." (St. Okla. 1893, sec. 4156.)

Section 5786:

"All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by a jury, or referred as provided in this Code." (St. Okla. 1893, sec. 4157.)

Section 5781 defines *how* issues arise. Section 5782 defines how issues at *law* arise. Section 5783, how issues of *fact* arise. Section 5785 prescribes what issues of fact *shall be tried by a jury* unless a jury is waived or a reference be ordered. Section 5786 provides that *all other issues of fact shall be tried by the court,* subject to its powers to order any issue or issues to be tried by a jury or referred, as provided in the Code.

These statutes, viewed in the light of the authorities above cited, are susceptible of but one logical construction, viz., that all issues of fact, arising in actions for the recovery of money or for the recovery of specific real or personal property, shall be tried by a jury unless a jury is waived or a reference ordered. They are mandatory both in meaning and language, and to refuse a jury in such cases would constitute reversible error; and in section 5786 the language is equally strong, and the provisions

equally mandatory, that all other issues shall be tried by the
court subject to its power (discretion) to submit the issues to
a jury or direct a reference. This action not being one for the
recovery of money nor for the recovery of specific real or per-
sonal property, but an action to declare a resulting trust—strictly
an equitable action—it was discretionary with the court whether
the issues of fact raised by the pleadings be submitted to a jury
or tried by the court. From the nature of the case it was not an
abuse of discretion to refuse a jury, and from the evidence con-
tained in the record there was no error in the judgment.

The judgment is therefore affirmed.

By the Court: It is so ordered.

All the Justices concur.