**WESTERN LAND SECURITIES CO. et al. v. OKLAHOMA FARM MORTG. CO. et al.**

No. 13667—Opinion Filed May 19, 1925.

Rehearing Denied Sept. 8, 1925.

**1. Mortgage.—Foreclosure—Necessary Parties Defendant—Trustee.**

In an action where it is claimed that a party was made a trustee, under a written agreement, which gave the trustee absolute power to dispose of real property, and said property is conveyed to the trustee by deeds absolute on their face, making him the owner of the legal and record title, and the written agreement expressly states that the intention of the parties thereto was only to regulate the disbursements of monies coming into his hands pursuant to the agreement, said trustee is the only necessary party in a foreclosure proceeding against the property to satisfy a debt, acknowledged in the agreement and authorized to be paid, incurred prior to the creation of the trust. The other interested parties are not necessary parties.

**2. Trusts—Express Trust in Real Estate—Title and Right Conveyed.**

Except where it is otherwise provided by statutes, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust.

**3. Mortgages—Foreclosure—Necessary Parties Defendant—Indorser of Note.**

Except for the purpose of obtaining a personal judgment against one who is merely an assignor or indorser of a promissory note, secured by a mortgage, he is neither a necessary nor a proper party to an action against the maker to foreclose the mortgage, except as provided by statute.

**4. Same—Foreclosure and Redemption—Statue of Limitations.**

The right to redeem being co-existent with the right of action by the holder of a note and mortgage, the two rights being mutual and reciprocal under the decisions, when the one cannot be enforced the existence of the other is denied, and the right of action to redeem is barred by the statute of limitations in the same time in which the statute would bar the right to foreclose the mortgage.

**5. Lis Pendens — Doctrine Inapplicable Against Mortgage Foreclosure.**

Upon the petition and exhibits thereto the doctrine of lis pendens does not apply in this case.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Thomas A. Edwards, Assigned Judge.

John H. Myers and Geo. A. Fitzsimmons, for plaintiffs in error.

H. W. Harris and Burford, Miley, Hoffman & Burford, for defendants in error.

Opinion by THOMPSON, C. This action was instituted in the district court of Oklahoma county, Okla., on the 17th day of October, 1921, by the Western Land Securities Company, a corporation, John W. Offield, John H. Myers, C. I. Myers, and Geo. A. Fitzsimmons, as trustee of the O. K. T. Investment Company, a defunct corporation, plaintiffs in error, plaintiffs below, against the Oklahoma Farm Mortgage Company, a corporation, Orris F. Newman, Wm. A. Cobb, Esther Cobb, A. J. Corbin, Martha Corbin, Peter Novak, B. Novak and Jasper Sipes, defendants in error, as defendants below, to enforce the right to redeem lots 3 and 4, held by the defendants in error under a foreclosure mortgage sale, and for an accounting for the rents and profits from said property, while in possession of the defendants in error, and for title after redemption. The parties will be referred to as plaintiffs and defendants in this opinion, as they appeared in the lower court.

The petition, among other things, alleges that the property originally belonged to John W. Offield, one of the plaintiffs herein, and that he mortgaged the same to one Isaac Simmons, which mortgage was foreclosed by judgment on November 25, 1911, and the property sold at sheriff's sale to Jeter Morse on July 2, 1912, and sheriff's deed issued therefor, which deed was attached as an exhibit; that, prior to the judgment of foreclosure, John W. Offield bought building material from a firm, of which Jeter Morse was president and manager, and employed the firm of Lutes & Kuntz to erect certain

buildings upon the property; that after the property was sold to Jeter Morse, he brought an action against Offield, Lutes & Kuntz and others, without first having procured the possession thereof from John W. Offield, to quiet title within himself, and obtained a judgment therefor on October 4, 1912, quieting his title and an order for the possession of the property was placed in the hands of the sheriff of Oklahoma county for service, and that before the same was executed by the sheriff, Offield filed his petition to vacate the judgment on the grounds of fraud in obtaining same, and a temporary order was issued by the court, suspending service of the writ until a further hearing of the cause by the court, and that no further action was ever had in regard to said petiton to vacate the judgment and it remained undisposed of at the time of the commencement of this action. That, thereafter, on the 22nd day of January, 1913, a certain written agreement was entered into by and between Jasper Sipes, Lutes & Kuntz and John W. Offield, whereby the lots described in the petition were assigned to Jasper Sipes and the possession thereof delivered to him upon the payment to Jeter Morse of $2,799.10, and the further consideration that he assume six real estate mortgages held by the Oklahoma Farm Mortgage Company, in the aggregate sum of $4,500 on this and other property, and the said Jeter Morse, under said agreement, assigned his title, obtained in the foreclosure proceedings, to Jasper Sipes by quitclaim deed, and John W. Offield and Lutes & Kuntz also assigned their interests to Jasper Sipes by quitclaim deeds, and it is claimed in the petition that Jasper Sipes held the same as trustee for the said John W. Offield and Lutes & Kuntz. (A copy of the written contract was attached to the petition and made a part thereof, and will be referred to later in this opinion.) That one of the mortgages executed by Morse and wife to the Oklahoma Farm Mortgage Company was upon the lots in dispute here; that at the time of the execution of the mortgages to the Oklahoma Farm Mortgage Company, it had knowledge of all the defects in the said title of said Morse and the pendency of the action, in which the writ of possession had been recalled and the sheriff ordered not to execute the same, and that the only validity the said mortgages had was by virtue of the written contract above referred to, of which the Oklahoma Farm Mortgage Company had actual notice; that the mortgage of the Oklahoma Farm Mortgage Company was foreclosed in an action by the said company against Jeter Morse and wife

and Jasper Sipes, in which action John W. Offield, Lutes & Kuntz, John H. Myers, C. I. Myers and others were not made parties defendant, and that Jasper Sipes was sued in said action in his individual capacity and not as trustee under the written contract; that Lutes & Kuntz claimed, under a builder's contract, for work and labor performed, and that John H. Myers and C. I Myers claimed an interest in the property as indorsers of a note, executed by Lutes & Kuntz and Clara Lutes to Jasper Sipes, for the amount of $1,075, dated November 18, 1911, for which the building contracts of Lutes & Kuntz for the improvements erected by them were assigned to Jasper Sipes, as collateral security for the payment of said note; that at the time of the institution of the foreclosure suit by the Oklahoma Farm Mortgage Company, there was pending in the district court of Oklahoma county a certain suit in which Nicholas Kilburg was plaintiff and John W. Offield, John H. Myers, C. I. Myers, Jasper Sipes, Lutes & Kuntz and others were defendants, in which the claims of parties to that action to the lots in controversy here were set up in petition and cross-petition, and said cause is pleaded as a lis pendens as against the Oklahoma Farm Mortgage Company, not a party to the action, to foreclose its mortgage. That judgment was rendered in said action November 7, 1917, defining the rights of all parties to this action. The mortgage of Jeter Morse and wife to the Oklahoma Farm Mortgage Company upon the lots in controversy here was to secure the payment of a note of $703.65, upon which default was made in the payment of interest thereon due October 1, 1915, as shown by a copy of the petition, attached to plaintiffs' petition as an exhibit; that judgment was rendered in said foreclosure proceedings on the 30th day of May, 1916, for the debt and for foreclosure of the mortgage and for sale of the property, and that said property was sold to the Oklahoma Farm Mortgage Company by the sheriff and sheriff's deed issued therefor on the 2nd day of January, 1917; that the property, or a part thereof, had been sold and transferred to Orris F. Newman, A. J. Corbin, Martha Corbin, Peter Novak and B. Novak and others, and all the rights and claims of John W. Offield, Lutes & Kuntz, John H. Myers, C. I. Myers and Geo. A. Fitzsimmons, as trustees for the O. K. T. Investment Company, have been assigned to the Western Securities Company, under which it claims the right under the petition to redeem said property from sale under the foreclosure proceedings of the Oklahoma

Farm Mortgage Company and the right to an accounting of the rents and profits from said property as a credit against the indebtedness against said property, and to have the title vested in it.

To this petition all the defendants except Jasper Sipes filed a demurrer, and Jasper Sipes filed his answer by way of general disclaimer. The court sustained the demurrer of the defendants and the plaintiffs chose to stand upon their petition and refused to plead further, and the court rendered judgment in favor of the defendants, dismissing the petition of plaintiffs, and entered judgment for costs against plaintiffs, from which judgment of the court the plaintiffs appeal to this court for review.

The above statement of what is contained in the petition is sufficient for the purposes of this opinion. It is a very involved petition, covering 41 pages of single-space matter of the printed brief of the attorneys for plaintiffs. The question to be determined here is whether the demurrer of the defendants, after disclaimer by Jasper Sipes, should have been sustained by the trial court and the cause dismissed.

In our view of the case, the rights of John W. Offield, Lutes & Kuntz, the Western Land Securities Company, as the assignee of the rights of all the parties plaintiff in this action, and the Oklahoma Farm Mortgage Company, and those claiming by, through or under it, are largely to be determined by the written contract entered into by and between Jasper Sipes, Lutes & Kuntz, John W. Offield and the quitclaim deeds from John W. Offield, Lutes & Kuntz and Jeter Morse and wife to Jasper Sipes. The contract is as follows:

"Agreement.

"This agreement, made this ——day of January, 1913, by and between Jasper Sipes, party of the first part, and Lutes and Kuntz, a copartnership, composed of E. A. Lutes and Edward M. Kuntz, parties of the second part, and J. W. Offield, party of the third part:

"Witnesseth:

"That whereas, the party of the first part has purchased from Jeter Morse the real estate hereafter described for and in consideration of the payment of $2,799.10 in cash, and subject to six mortgages placed upon said property by Jeter Morse, the principal sums of which aggregate $4,500 and,

"Whereas, the second and third parties warrant that they have vacated all or any part of said premises, occupied by them, or either of them, and further warrant that they have delivered possession of all of said real estate to first party, and,

"Whereas, the second and third parties have executed to the party of the first part, for the consideration therein named, quitclaim deeds to said real estate.

"Said real estate above referred to being described as follows: Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, all in block 1, in Offield's addition to Oklahoma City, Okla-, homa county, state of Okla. according to the recorded plat thereof, in the office of the register of deeds of Oklahoma county, Okla.

"It is agreed as follows:

"First. The first party, Jasper Sipes, is given the absolute authority and power, whenever he deems it advisable, and solely at his discretion, to sell, mortgage or dispose of in any way at such time and on such terms as he sees fit, the whole or any part of said described real estate, and is further authorized by the parties hereto to execute and deliver all deeds and instruments, transfers or other writing necessary to pass title, and is further authorized to sell and dispose of any notes, contracts, mortgages or other evidence of indebtedness received by him as a part of the purchase price of any sales or accruing from the collection of rents of said real estate, by him or in any other way; the said Jasper Sipes being given power and authority to deal with said property as freely as though he owned the same in fee simple, the intention of this agreement being only to regulate the disbursement of the monies coming into his hands pursuant to the terms of this agreement.

"Second. The said Jasper Sipes shall dispose of the net proceeds coming into his hands as aforesaid, as follows:

"(1) To the payment of all taxes, insurance, interest on mortgages now on said real estate, any improvements placed upon said property, the costs of any repairs to any of the property, and all expenses and charges incurrred under this agreement in and about said real estate.

"(2) To the reimbursement of the said Jasper Sipes of any of the mortgage indebtedness now upon said real estate, or any part thereof paid off by him, and to the reimbursement of himself of $2,799.10, together with interest thereon at the rate of ten per cent. per annum from this date, being the amount paid by the said Jasper Sipes to said Jeter Morse for his interest in said real estate.

"(3) Any sum remaining after all the foregoing shall have been paid to be paid to Lutes and Kuntz, or their assigns, the sum of $1,960 or as may be hereafter shown to be due, together with ten per cent. interest thereon from date.

"(4) The balance, if any remaining,

after all the foregoing items are paid, shall be turned over to J. W. Offield, or his order.

"This contract is executed on the day and date first above written.

"(Signed) Jasper Sipes,
"Party of the First Part.

"Witnesses:
"(Signed) Mary Hunter.
"(Signed) Charles B. Selby.
"(Signed) Lutes and Kuntz,
"By W. A. Kuntz,
"Parties of the Second Part.

"Witnesses:
"(Signed) Mary Hunter.
"(Signed) Charles B. Selby.
"(Signed) John W. Offield,
"Party of the Third Part."

In our opinion, all the parties to the contract, above set forth, are concluded by said contract in asserting any right, either under lis pendens, liens, possession or otherwise, prior to the execution and delivery of said contract. The rights of Clara Lutes, John H. Myers and C. I. Myers are to be determined by ascertaining what rights they have, Clara Lutes as one of the makers and John H. Myers and C. I. Myers, as the indorsers, with John W. Offield of the note for $1,075, made, executed, and delivered by Lutes & Kuntz to Jasper Sipes. The rights of Jasper Sipes are concluded by his disclaimer of any interest in the present action.

A reference to the written contract, above set forth, shows that it recites that Jasper Sipes had purchased the interest of Jeter Morse in his title, purchased at the judicial sale in the foreclosure action by Isaac Simmons, which sale is not attacked in any way in the petition, except that it is alleged that Jeter Morse purchased title at said sale, with the understanding with John W. Offield and Lutes & Kuntz that their rights would be protected by him, but Offield and Lutes & Kuntz are parties to the contract under discussion here, and they assign their rights and the right of possession of the property to Jasper Sipes and the undetermined pending action on the petition of John W. Offield to set aside the judgment in the case of Jeter Morse against him, and Lutes & Kuntz, passes out of this case as to them and all persons claiming under them, by virtue of this contract and by virtue of their quitclaim deeds to Jasper Sipes under the terms of the contract. The contract gave Jasper Sipes absolute authority and power to sell, mortgage, or dispose of in any way, at such time and on such terms as he saw fit, the property involved in this action and to make and execute all deeds or conveyances of every kind in his own name and to pass title thereby and the express intention of the parties is set forth in clear and unambiguous language as follows:

"The intention of this agreement being only to regulate the disbursements of the monies coming into his (Sipes') hands pursuant to this agreement."

And, in our opinion under the language of the contract, there was no trust created in Sipes to the property, itself, and he was only limited under the contract to an accounting of the monies received therefrom and to make disbursements as provided in the contract. All the mortgages executed by Jeter Morse and his wife on the property in this action were recognized, admitted, and the payment of the indebtedness for which said mortgage was given, was provided for in the contract and Jasper Sipes assumed said mortgages as part of the consideration for said contract and he was directed and authorized to pay the same out of the property. This he failed to do and allowed the interest to accumulate, and after certain interest fell due, the Oklahoma Farm Mortgage Company instituted its action against Jeter Morse and wife, the makers of the note and mortgage, and against Jasper Sipes, the record title owner, who assumed said mortgage and who was directed to pay the same out of the property by the very terms of the written contract heretofore set out in this opinion, and it is our opinion that John W. Offield and Lutes & Kuntz were neither necessary nor proper parties. Jasper Sipes is not named in the contract as trustee. He is sued in the foreclosure action by the Oklahoma Farm Mortgage Company as Jasper Sipes, as he was named and denominated in the written agreement heretofore set out in this opinion. It is recited in the contract, itself, that Sipes purchased the property from Morse and that Lutes & Kuntz and Offield had executed quitclaim deeds and delivered possession thereof to him for the considerations mentioned in the second paragraph of the contract, and that he was to use the property the same "as though he owned the same in fee simple," and whatever may be said in other cases, that where certain disbursements are provided to be made by the holder out of proceeds from the sale of property, such a provision in the contract creates a trust both in the real estate and the property, and this may be correct, but, where, as in this case, the parties to the contract in express words say that their intention was only "to regulate the disbursements of the monies com-

ing into his hands," the parties to said agreement bind themselves by their own words and put themselves out of the rule laid down in those opinions, declaring a trust in the property, and the only trust in this case, that can possibly be determined under the contract, applies "only" to whatever proceeds might have remained in the hands of Sipes after he had reimbursed himself for the purchase price paid to Morse, taxes, insurance, interest and the payment of the mortgage indebtedness and, if any there be remaining, it should be paid to Lutes & Kuntz to the sum of $1,960 and, if any remained after this payment, the balance should be turned over to John W. Offield, or his order.

It is alleged in the petition that the Oklahoma Farm Mortgage Company had actual knowledge of this contract, the same not having been recorded, and, in our opinion, having knowledge of the terms of the contract, by which their mortgage was acknowledged and provided to be paid by Jasper Sipes, as part of the consideration in said contract, it accordingly had the right to bring its action against the record title owner under the quitclaim deeds heretofore referred to, and against the party who had assumed the mortgage and who was authorized to settle and pay the same by said contract, it then became unnecessary for it to make John W. Offield and Lutes & Kuntz parties.

Section 8474, Comp. Stat. 1921, provides:

"Except as hereinafter otherwise provided, every express trust in real property, valid as such, in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust."

In the case of Corcoran v. C. & O. Canal Co., 94 U. S. 741. the court said:

"It would be a new and very dangerous doctrine in equity practice to hold that the cestui que trust is not bound by the decree against his trustee in the very matter of the trust for which he was appointed. If Mr. Corcoran owned any of these bonds and coupons, he is bound because he was representing himself. If he has bought them since, he is bound as a privy to the party who was represented."

To the same effect is the case of Kerrison v. Stewart et al., 93 U. S. 155.

In the instant case the contract, itself, provided that Jasper Sipes assumed and was to pay the mortgage indebtedness of the Oklahoma Farm Mortgage Company, the controlling matter for which the contract was entered into and for which he was named in the contract.

As to Clara Lutes, one of the makers of the note, and John H. Myers and C. I. Myers, accommodation indorsers, it is contended that they were necessary parties because of the building contract, put up by Lutes & Kuntz as collateral security for the payment of said note. There is nothing in the record to show that Lutes & Kuntz ever perfected any mechanic's or materialman's lien upon the property, but that they merely had a building contract with John W. Offield and, therefore, they could not have any interest in the real estate and the allegations of the petition, on this phase of the case merely state that these allegations of fact were set up by the Myers in their cross-petition in a former action, in which the Oklahoma Farm Mortgage Company was not a party, and that the building contract, under which they claim, was assigned to Jasper Sipes as a further security. There was no personal judgment sought against the Myers, or Offield or Lutes & Kuntz, in the Oklahoma Farm Mortgage Company's action, and, therefore, they could not be said to be necessary parties. It cannot be said that Clara Lutes or the Myers had any title to the property, for this title was in Jeter Morse, procured by him at a judicial sale and that he executed the mortgage sued on to the Oklahoma Farm Mortgage Company, which mortgage was acknowledged by the only parties who had any title to the property. Then, by what process of reasoning would it be necessary to make Clara Lutes and the Myers parties to the foreclosure proceeding? The mere statement of this proposition is its answer, and demonstrates the fallacy of the idea that they had any interst in the real estate which had to be foreclosed.

In Jones on Mortgages, sec. 1434, it is said:

"Except for the purpose of obtaining a personal judgment against one who is merely an assignor or indorser of a promissory note secured by a mortgage, he is neither a necessary nor a proper party to an action against the maker to foreclose the mortgage, except as provided by statute.

"Unless there is an express statutory provision or facts giving equitable jurisdiction over the demand, a third person who is liable for payment of the mortgage debt cannot be joined as a defendant, he having no interest in the mortgage." 27 Cyc. 1578.

Even the maker of a note and mortgage is not necessary party to foreclosure, if he has parted with the legal title, though still

liable on the note. California Title Ins. & Trust Co. v. Muller (Cal. App.) 84 Pac. 453; Jones v. Lopham, 15 Kan. 540; 9 Ency. Pl. & Prac. 332, and cases cited.

The rule is equally applicable to Mrs. Lutes, even though she was a maker of the note, where it is not alleged that she had any interest in the property mortgaged as collateral.

The right of Offield, the original title owner of the property, was foreclosed in the Simmons suit, heretofore referred to, and by the agreement entered into with Jasper Sipes and by his quitclaim deed to Sipes. Lutes & Kuntz never had any title to the real estate or any lien thereon and their rights were concluded by the agreement and by their quitclaim deed to Jasper Sipes, as far as the title to the property is concerned, and, therefore, the joint maker and the accommodation indorsers upon the Lutes & Kuntz note to Jasper Sipes could not possibly have any title and the contention that the allegations contained in a cross-petition in the Kirkbride Case, in which the Oklahoma Farm Mortgage Company was not a party, could not constitute a lis pendens to defeat its rights, and it necessarily follows, then, that Jeter Morse and wife and Jasper Sipes and wife were the only necessary parties defendant to the foreclosure proceeding by the Oklahoma Farm Mortgage Company complained of in this action.

The petition and exhibits show that Jeter Morse obtained title to the property on July 2, 1912, at the judicial sale; that he mortgaged the property to the Oklahoma Farm Mortgage Company a short time thereafter; that the judgment in the Oklahoma Farm Mortgage Company proceeding was rendered on the 30th day of May, 1916; that the plaintiffs in this case first began judicial proceeding for a judgment to redeem the property in this case from said foreclosure and sale by filing its petition on the 17th day of October, 1921. The payment on the note, for which the mortgage was given, became delinquent on the 1st day of October, 1915, as shown by the exhibit and the judgment therefor rendered by the court for the amount of the note and foreclosure of the mortgage security, over five years before the commencement of the present action, and the right to redeem being coexistent with the right of action by the holder of the note and mortgage, the two rights being mutual and reciprocal under the decisions, when the one cannot be enforced, the existence of the other is denied and the right of action to redeem is barred by the statute of limitations

in the same time in which the statute would bar the right to foreclose the mortgage.

The Supreme Court of California, in the case of Koch v. Briggs, 14 Cal. 256, said:

"In mortgages there exists the right to foreclose after conditions broken and the right to redemption from forfeiture. These two rights are mutual and reciprocal. When one cannot be enforced, the existence of the other is denied."

This principle is sustained in the following cases: Smith v. Foster et al, 44 Iowa, 442; Brenner v. Quick, 88 Ind. 546-556; Cunningham y. Hawkins, 24 Cal. 403; King v. Meighen, 20 Minn. 237; and Fitch v. Miller (Ill.) 65 N. E. 650.

In the instant case, the right of the mortgagee, the Oklahoma Farm Mortgage Company, to foreclose its mortgage began before its action was commenced in April, 1916, and before the judgment of foreclosure was rendered in the cause on May 30, 1916. The rights of the plaintiffs and their grantors to redeem in this action commenced to run from the time the note became delinquent and certainly from the dates last mentioned, and they did not commence this action to assert their rights to redeem by judicial proceeding until more than five years thereafter. We are of the opinion that the relief asked for in this action is barred by the statute of limitations.

We are, therefore, of the opinion that the judgment of the lower court, sustaining the demurrer to the plaintiffs' petition, was correct and that the judgment dismissing plaintiffs' action should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 1569. (2) 39 Cyc. pp. 207, 228. (3) 27 Cyc. p. 1579. (4) 27 Cyc. pp. 1816, 1851. (5) 25 Cyc. p. 1461.