**STROUD v. PAULK et ux.**

No. 26661.   Feb. 16, 1937.

Rehearing Denied March 16, 1937.

Second Petition for Rehearing Denied March 30, 1937.

Meacham, Meacham & Meacham, for plaintiff in error.

A. J. Welch, for defendants in error and cross-plaintiffs in error.

PER CURIAM. On February 2, 1933, Paulk and wife filed an action against J. W. Stroud alleging in substance that they were owners of certain lots and borrowed $600 from Stroud on February 5, 1926, for a period of six months at 8 per cent. interest and gave as security a warranty deed to the lots which was placed in escrow in the Liberty National Bank of Weatherford with a written contract signed by both of the parties to the effect that said deed would be returned to plaintiffs upon the payment of said indebtedness; that about March 27, 1926, Stroud fraudulently procured the deed from the bank, placed it of record, and about August 15, 1926, unlawfully took

494

possession of the property and had wrongfully kept it since that time, collected the rents and profits, and had sold a 50-foot tract of the property to one McCullough, converting the proceeds to his own use. They prayed for possession, cancellation of the deed, the quieting of their title, and an accounting for the rents and profits, the defendant to be credited with the amount of his loan and interest and with the taxes and special assessments paid by him, and in the event said assessments should exceed the amount received by him they offered to pay the excess and to tender into court such amount as may be determined on an accounting. As a second cause of action they prayed for the value of the tract sold to McCullough. Defendant had filed a motion to require plaintiffs to set out the acts constituting unlawful possession and in what way the proceeds of the sale of the 50-foot tract were wrongfully converted, and on hearing it was overruled by the court and plaintiffs were permitted to file instanter an amended petition in which it was alleged that their first knowledge of the recording of the deed came to them in November, 1932, which was some six years and nine months after the fact; that about the time the loan first came due they procured an extension of time from defendant for another twelve months on condition that plaintiffs pay the rents on the property to the defendant to apply on the loan and interest; that they in May, 1927, before leaving the county, had a verbal agreement with defendant by which the rents from the property were to be paid to him and credited on the loan, less the amount necessary to pay taxes, but the plaintiffs at no time surrendered possession, but that for the purpose of carrying out the agreement defendant was given the right to collect the rents, and thereafter at a time unknown to plaintiffs the defendant repudiated the agreement, unlawfully took possession of the property as his own, wrongfully claiming the deed absolute, of which they had no knowledge until September, 1932; alleged the rental value to be $12 per month from May, 1927, to August, 1928, and thereafter $35.

Defendant answered by general denial; alleged that on February 5, 1926, he bought the property for $600 and was given a deed; that it was understood and agreed between them that the Paulks might repurchase at any time within six months thereafter, but that they did not do so; that he went into possession pursuant to the deed and that he had been in visible possession for more than six years before the suit; that he had built three houses on the property; had put in valuable personal time and labor on the property; that plaintiffs stood by for more than five years with full knowledge and notice without protest or objection; that at the time of his purchase the property was unimproved except for a "shack" house of a value of not more than $100; that about that time the property was subjected to heavy annual paving assessments and the improvements were necessary to bring in rentals to pay the taxes and assessments, and had no improvements been made the property would have been without value; that plaintiffs had at all times ignored the property, the taxes, assessments, and burdens and were not in position to claim ownership; pleaded the statutes of limitation and laches on the part of the plaintiffs.

Glen Paulk testified that in February, 1926, he borrowed $600 from Stroud for six months at 8 per cent. interest and made a note; that he offered a mortgage as security, but Stroud refused to take it, stating he did not want to be bothered with foreclosing it and wanted a deed on the property, and he agreed to the request; that a contract for the deed was written up in Mr. Howe's office and placed in the Liberty National Bank with the deed, and a copy of the contract was given to both Paulk and Stroud, but that he, Paulk, was unable to find his copy; that in substance it provided that he was putting up the deed as security in escrow in the bank to be kept there until paid off and he had never authorized it to be taken out; it was September or November, 1932, before he first learned it had been taken out; when the note first came due Stroud gave him twelve months' extension; he saw Stroud in March or April, 1927, and told him he could not pay the $600, would be out of the county and "would let him collect the rent on it and apply on the loan and keep taxes paid"; about 30 days after that he came back and got his wife, went to Seminole, and in August, 1927, went to Texas and was not back again until the fall of 1932, five years later; found his house had been moved away and some more houses had been built on the lots; his wife also signed the contract, which did not provide what would happen if he failed to pay the debt; but provided the deed was to stay in the bank until it was paid; at the time of the loan his wife was with him at Altus, but was back and forth from Altus to Weatherford; he moved from Weatherford in the latter part of 1925 and had already left when he made the trade with Stroud, but came back and his wife lived in the house at Weatherford

about a month in 1927 while he was in Seminole. About the first of May, 1927, he came for his wife, took her to Seminole for a couple of months, and then, the last of August, 1927, moved to West Texas and stayed there until 1932; during that time he wrote no letters to Stroud, paid no taxes and made no inquiry about the property.

Stroud testified he bought the property in question from Paulk in 1926; that he saw him on the street some three to ten days after the transaction and did not hear from him thereafter and never saw him again until the case was called for trial on March 4, 1935; at the time he purchased the property it had an old three-room, common box house about twelve feet wide and 20 feet long on it, which he sold for $100 during the last of 1927 or the first of 1928; that he started improving it, building three houses, the first costing $1,741.80, which he sold to McCullough right after it was built; the other two at a cost of $2,200.45 and $2,250.45, respectively. He stated he believed he had good title to the land when he improved it, having bought and paid for it outright.

Mr. Eugene Howe was the scrivener who prepared the escrow contract. He testified that, as he remembered, in the beginning Mr. Paulk wanted to borrow some money on the lots and Stroud did not want to make a loan, and finally they decided that he would buy the lots and Paulk would have a right to repurchase them within six months, and "in that way the matter was fixed up;" Paulk agreed to sell them for a price around $600: Stroud made a deed for the lots back to Paulk and this was placed in the bank to go to Paulk if he took the lots at the price paid plus the interest; Howe sent the deed from Paulk to Stroud for recording. The record shows that the deed from Paulk and wife to Stroud and a deed from one Schultz and wife to Paulk covering the same property were recorded on March 27, 1926, at 1:10 o'clock p. m. The witness Hudgens testified without objection that it was currently reported in the neighborhood that Paulk was offering the property for $600 and he went to look at it with a view of buying it in 1926.

The case came on for trial March 4, 1935, and by stipulation of counsel a jury was called to act only in an advisory capacity. After the court directed the calling of a jury the stipulation was stricken, but defendant objected to a jury other than in an advisory capacity, which objection the court overruled, and defendant excepted. Nineteen interrogatories were submitted to the jury for answer. It rendered no general verdict and none was asked.

The jury returned its answers into court on March 6, 1935, and the court kept it under advisement until the 26th, at which time he announced in open court that it was the judgment of the court that the deed in controversy was intended as a mortgage, that the property sued for be returned to plaintiffs, and that they have possession upon payment of $1,000 to Stroud in 30 days, being the indebtedness Paulk owed Stroud; that Stroud have a lien for the indebtedness, and if not paid in 30 days, a special execution and order of sale issue, and divided the costs. The formal journal entry of judgment was signed April 3, 1935. It incorporated the oral judgment and also recited that all questions were submitted to the jury with the agreement that such of them as might appear to be improper or immaterial would be disregarded by the court in its final judgment; that the court refused to make specific findings upon any of the interrogatories and answers thereto; that the deed to Stroud be canceled and plaintiffs' title quieted; that Stroud execute a warranty deed to plaintiffs conveying good title, subject to unpaid taxes and assessments of record; that said payment of $1,000 balanced the accounts between the parties, and the indebtedness of Paulk to Stroud be canceled. To the judgment both parties excepted, filed motions for new trial, and appealed.

It is contended by defendant that plaintiffs' action was barred by laches and limitation; that the judgment was contrary to law and against the clear weight of the evidence, all of which are well taken. The plaintiffs contend the judgment in so far as it required defendant to pay plaintiffs $1,000 is erroneous and, in fact, they should not only have their debt canceled and obtain possession of the property and the buildings constructed thereon without payment of a cent, but should recover a personal judgment in their favor against the defendant for $2,586.-62.

1. Plaintiffs strenuously argue that the action was one of simple ejectment, coupled with a demand for the recovery of specific real property, for rents and profits, one strictly at law and governed by the 15-year statute of limitations. An examination of the petition will disclose, as said by the court in Warner v. Coleman, 107 Okla. 292, 231 P. 1053, that it contains no allegation that plaintiffs were the owners of the legal or equitable title to the land and entitled to the immediate possession thereof, but seek

an equitable remedy to vacate a legal conveyance and reinvest them with title. The gravamen of the action was to have a deed, fair on its face, declared to be a mortgage, essentially one in equity, and where the law feature, the possession, follows merely as an incident to the determination of the equitable issue on which it rests, it is not one for the recovery of specific real estate. The 15-year statute of limitation (subdivision 4, sec. 99, O. S. 1931) for recovery of real property does not apply.

2. Actions to foreclose a real estate mortgage are governed by the five-year statute of limitation (subdivision 1, sec. 101, O. S. 1931). Under the testimony of the plaintiffs themselves, the defendant's right to foreclose had been barred by the statute at the time of the filing of suit. The right to redeem is coexistent with the right to foreclose, and the two rights being mutual and reciprocal under the decisions, when one cannot be enforced, the existence of the other is denied, and the right of action to redeem is barred by the statute of limitations in the same time in which the statute would bar the right to foreclose the mortgage. Western Land Securities Co. v. Oklahoma Farm Mortgage Co., 111 Okla. 138, 239 P. 223. The right to redeem begins to run from the date of the adverse possession on the part of the mortgagee, and the action is barred within five years thereafter. Tomlin v. Roberts, 126 Okla. 165, 258 P. 1041. Stroud testified he rented the property in the summer of 1926 or 1927 for two or three weeks and began building the new houses on the lots in the last months of 1927, or possibly the first part of 1928. He sold the first completed new house to McCollough right after it was built. According to plaintiffs' petition, the sale was made on or about March 17, 1928. If this date be correct, Stroud exercised public dominion and claim of ownership in the premises more than five years before the action was filed. Paulk testified that in February, 1926, Stroud gave an extension on his loan for twelve months, or to February, 1927; that he had been away to Altus and Seminole, and in March or April, 1927, he came to Weatherford after his wife, saw Stroud and told him that he could not pay the $600 and would let him collect the rent and apply it on the loan and keep the taxes paid. He did not testify that Stroud agreed to this or accepted his offer. He then took his wife with him to Seminole, and then to Texas, where he stayed until November, 1932. According to his testimony, the loan became due more than five years before the suit was filed. The

original petition admits adverse possession was taken about August 15, 1926, and the amended petition, soon after May, 1927. The right to redeem was therefore barred in five years thereafter. The suit was not filed until February 2, 1933, and the right to redeem was clearly barred.

3. As the foregoing disposes of the appeal, it is not necessary to review the other errors alleged, although, in our opinion, well taken. For the reasons given, the cause is reversed, with direction to enter judgment in favor of the defendant.

The Supreme Court acknowledges the aid of Attorneys Frank D. McSherry and Chas. H. Hudson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McSherry and approved by Mr. Hudson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

BAYLESS, V. C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur.