EXCHANGE BANK OF PERRY et al. v. NICHOLS, Adm'x, et al.

No. 30971. Nov. 13, 1945.

Rehearing Denied Jan. 8, 1946.

*164 P. 2d 867.*

Hunt & Eagleton, of Tulsa, for plaintiff in error Exchange Bank of Perry.

Al T. Singletary, of Perry, for plaintiff in error Elmer H. Todd.

Wilson & Wilson, of Enid, for defendant in error Florence Doggett Nichols, Administratrix.

GIBSON, C. J. In 1910 E. E. Doggett, a resident of Perry, Okla., was actively engaged in business and had extensive business relations with Exchange National Bank of Perry, Okla., plaintiff in error and hereinafter designated as Bank. On July 15th of that year Doggett purchased lot 14 in block 24 of the then townsite of Perry, and in pursuance of his oral agreement with Fred G. Moore and H. A. McCandless, president and cashier, respectively, of the Bank, the lot was conveyed to McCandless individually with the understanding that he would hold it as security for all indebtedness of Doggett to the Bank then existing or thereafter arising in the course of such business relationship and, when such indebtedness was fully paid, the lot would be conveyed to Doggett. It was also agreed then or later that the Bank should collect the rents on the property to be applied on such indebtedness and keep a record thereof under the designation "Doggett Rent Account."

In 1913, while the plan was being pursued, Anna Doggett, wife of E. E. Doggett, instituted in the district court of Noble county an action for divorce, alimony and property settlement; and McCandless and the Bank were made codefendants therein. At the time of the commencement of the action Doggett was also owner of lot 15 adjoining lot 14, and the title thereto was also held by McCandless as like security. Anna Doggett prevailed in her action, and with reference to the property settlement decreed therein the court found that the conveyance of the lots to McCandless was in legal effect a mortgage to secure the indebtedness of Doggett to the Bank and found that the amount thereof was $2,494.06. The decree, seeking to secure to Anna Doggett lot 15, or its value, free so far as possible of said indebtedness, directed that the Bank or McCandless sell first lot 14 and should sell lot 15 only in event the proceeds of sale of lot 14 were insufficient to satisfy the indebtedness. Upon appeal the judgment was affirmed and became final on January 17, 1922. Doggett et al. v. Doggett, 95 Okla. 90, 203 P. 223. After remand, and in ac-

cordance with the wishes of E. E. Doggett and the Bank, order of sale was issued to the sheriff, who, after appraisement thereof at the value of $8,000, sold lot 14 at public sale to the Bank on its bid of $5,350 and the sheriff's deed was issued.

Previous to the sale it was orally agreed between Doggett and Moore that in order to accomplish the purpose of the decree and also to continue the existing relation the Bank would purchase lot 14 to be held as security as theretofore, that no consideration was to be paid other than necessary to take care of the court costs and that the rental proceeds of the property be carried in the Doggett Rent Account and the expense, interest, and principal of such indebtedness would be charged against it. No consideration was paid nor was any evidence of indebtedness canceled or surrendered.

On May 1, 1924, on the official stationary of the Bank there was executed the following statement in writing:

"We this day make final settlement of all matters and amounts owing each and agree that there is due from E. E. Doggett to Exchange Bank, H. A. McCandless *est.* and F. G. Moore the sum of $2944.37. That E. E. Doggett will pay this amount just as soon as possible. All properties involved will be returned to owner.

"Witness to Signatures

"R. D. McCandless,     F. G. Moore
"T. E. Roderick       E. E. Doggett."

In 1926 a new lease for a term of five years was executed by the Bank and Doggett as lessor on the lot and the rentals accruing therefrom were carried by the Bank in the "Doggett Rent Account" to be applied in accordance with the original arrangement which continued unimpaired until after the retirement of Moore as president in 1929. Subsequent to such retirement friction arose causing a cessation in borrowing by Doggett under said arrangement and a dispute as to the respective rights of Doggett and the Bank in the premises.

In October, 1936, in response to the request of the attorney for Doggett for information concerning the status of the matter, it was admitted by Hall, cashier of the Bank, that the rents collected then exceeded the indebtedness of Doggett to the extent of $675, and Y. V. Willett, president of the Bank, offered to pay to Doggett said sum and to execute to him a quitclaim to lot 14 to avoid a lawsuit, but declined the request of the attorney for a statement of the account. In the latter part of January, 1937, the attorney on attempting further discussion of the matter was told by Hall that the Bank would not make the settlement previously offered. A few days later it was discovered by the attorney from the records that the Bank had on January 25, 1937, by quitclaim deed, conveyed lot 14 to one Elmer H. Todd, plaintiff in error herein, for an expressed consideration of $6,000 evidenced by note and to secure which Todd executed to the Bank a mortgage on the lot, and gave the Bank written power to control the property and collect rents thereof to be applied on the note.

During 1919 Doggett made improvements upon the building located on the lot for which labor liens were filed which resulted in a foreclosure action by one John J. Pricer and others against Doggett as sole defendant. From a judgment for plaintiffs therein an appeal was prosecuted to this court, where, on July 1, 1924, the judgment was reversed and the cause remanded for a new trial. (Doggett v. Pricer et al., 100 Okla. 128, 227 P. 875.) The cause was retried on Jan. 5, 1932, resulting in final judgment for plaintiffs which, inclusive of attorney's fees and costs, aggregated $1,214.90, which became final. Thereafter, on December 18, 1936, order of sale was issued and thereunder the lot was advertised for sale during the latter part of January, 1937. On the day previous

to that set for sale one G. H. Voss, on the advice of Willett, president of the Bank, obtained assignments of the judgments and the sale was not held.

The present action was instituted on March 2, 1937, by Doggett, as plaintiff, against the Bank, Todd and Voss, defendants. The petition is quite lengthy and contains five causes of action. In substance there is sought to establish the sheriff's deed to be a mortgage, the Bank a mortgagee in possession, and an accounting by and personal judgment against the Bank for money and recovery of possession of lot 14, and against Todd and Voss a decree quieting title against their claims and cancellation of the deed and judgment, held by them respectively, as claims upon plaintiff's title, and for damages both actual and punitive.

Previous to trial E. E. Doggett, plaintiff, died, and on stipulation the cause was revived in the name of Florence D. Nichols, administratrix of the estate of E. E. Doggett, deceased.

Upon trial judgment was awarded defendant Voss, holder of said judgment, and no appeal is prosecuted therefrom. Relief on action for damages was denied. It was decreed that the sheriff's deed to the Bank was given as security and the Bank was ordered to account for all rents, issues and profits, and upon same being had plaintiff was awarded personal judgment against the Bank in the sum of $4,147.30, representing rentals collected by the Bank in excess of the indebtedness, and further decree that title to said lot be quieted in plaintiff against the claims of the Bank and of Elmer H. Todd, who was decreed to be not a purchaser for value and in good faith, and that the sheriff's deed be canceled as satisfied and the deed from the Bank to Todd be canceled as a cloud upon plaintiff's title. It was also decreed that the note and assignment as well as the mortgage given by Todd to the Bank be canceled in order to place Todd in statu quo.

Separate motions for new trial were filed by the Bank and Todd, which were overruled, and separate petitions in error were filed by the Bank and Todd as plaintiffs in error herein.

The argument on behalf of the Bank for reversal is presented in three sections: First, error of court in overruling demurrer to second amended petition; second, error of court in decreeing sheriff's deed to be a mortgage and ordering an accounting; and third, the judgment and decree of the court on the accounting is not supported by the evidence.

Under the first section the following propositions are urged:

(1) The action attacking the sheriff's deed was barred by the statutes of limitations.

(2) There was no consideration either good or valuable to support the contract sued on.

(3) The action to establish that the title taken by sheriff's deed was in fact held as a mortgage was barred by the statutes of limitations.

(4) The May 1, 1924, written memorandum is insufficient to satisfy the statute of frauds.

(5) The May 1, 1924, written memorandum on its face reflects that F. G. Moore, the then president of the Exchange Bank, was executing a memorandum for his own benefit, so it is not binding on the Bank.

(6) The plaintiff's petition does not allege facts which would establish a resulting or constructive trust.

Under the second section the same propositions are urged as under the first with reliance upon the same argument, and the further proposition that the right of action for the accounting occurred more than five years previous to the institution of the action.

Under the third section there is an analysis of the evidence on the accounting.

There is no question but that, previous to the judgment in the divorce action, the title to lots 14 and 15 was held by McCandless as trustee to secure the payment of indebtedness to the Bank and that the indebtedness so secured included not only the indebtedness owing at the time of the conveyance to McCandless but that which might accrue in the course of a business relationship then existing and contemplated to continue.

It is equally true that it would have been legally permissible for the Bank in such situation to make a partial release of its lien—for instance, as to lot 15—without affecting its lien on the remainder as security for the entire indebtedness (36 Am. Jur. p. 924, § 475). The same is true with reference to change in form of the security. This rule is stated in 36 Am. Jur. p. 917, § 459, as follows:

"Ordinarily, the mere substitution of one form of mortgage for another which is released or discharged does not, in and of itself, establish the intent of the parties to accept the later security as full payment for the earlier, where the result would be a loss of priority of lien. This rule prevails where the first security is a mortgage in its ordinary form and the later security is in the form of a deed absolute, or vice versa."

It is clear in the instant case that it was the intention of the Bank and Doggett to extinguish the lien of such indebtedness so far as the same applied to lot 15 without disturbing their business relationship or the continuance of lot 14 as security therefor as before.

The question here is whether such result could be and was accomplished by the method pursued herein, that is, whether the sheriff's deed to the Bank was in legal effect a mortgage as designed or whether same gave rise to a resulting trust. However, whether the one or the other obtains in the instant case is immaterial for the purpose of relief, for in equity a mortgagee in possession is deemed a trustee

(Brown v. Leslie, 192 Okla. 43, 133 P. 2d 551). The distinction here becomes involved only in the method by which the trusteeship is reached—if through the medium that such deed is in effect a mortgage, an actual intent thereto is necessary (46 O. S. 1941 § 1), while if through resulting trust, the intent to create is imputed by law regardless of the intent of the beneficiary (McCoy v. McCoy, 30 Okla. 379, 121 P. 176, Ann. Cas. 1913C, 146; Bryant v. Mahan, 130 Okla. 67, 264 P. 811).

This question has not heretofore been determined by this court. However, it has been considered in many other jurisdictions and the substantial unanimity in the decisions is thus reflected in Jones on Mortgages (8th Ed.) vol. 1, sec. 406, p. 505:

"The rule which converts an absolute deed into a mortgage to conform with the intention of the parties to create a security, applies not only to voluntary conveyances by the grantor, but also to deeds received by purchasers at judicial sales, under an agreement with the debtor that the title should be held as security for a debt or loan, and be defeasible by payment of the money due. One who purchases at a foreclosure, execution, or other judicial sale, for the benefit of the equitable owner, and thus acquires the title at a price below the value of the property, may be deemed a trustee of the party for whom he has undertaken the purchase; and parol evidence is admissible to prove that the purchaser agreed to take title merely as security, and to reconvey when the money was refunded, creating in effect a mortgage.

"Such an agreement, although verbal merely, is not within the statute of frauds. The trust in such case arises or results upon the conveyance. It is a fraud to refuse to execute the agreement, and a court of equity will not permit the grantee to use the statute of frauds as an instrument of fraud. It would seem, however, that there can be no resulting trust unless the person claiming it has some interest in the property. . . ."

See, also, McElroy v. Allfree, 131 Iowa, 112, 108 N. W. 116, 117 A. S. R. 412.

The basic principle to the effect that the requisite privity arises through the ownership of the estate conveyed and not the medium of its transfer, was expressed in Balduff v. Griswold, 9 Okla. 438, 60 P. 223, as follows:

"In order to constitute a deed, absolute on its face, a mortgage, it is not necessary that the conveyance should be made by the debtor, or by him in whom the equity of redemption will exist. It is sufficient if the debtor, who claims to occupy the position of mortgagor with the right of redemption, has an interest, legal or equitable, in the premises, and the grantee of the legal title acquired such title by the act and assent of the debtor, and as a security for his debt."

In Dickson v. Stewart, 71 Neb. 424, 98 N. W. 1085, 115 A. S. R. 596, it is said:

"One who, by agreement, purchases land at a foreclosure sale for the benefit of the owner of the equity of redemption, at a price greatly below its value, cannot set up the statute of frauds against the party for whom he purchased; the law will hold him to be a trustee ex maleficio; a court of equity will not permit the statute of frauds to be made an instrument of fraud. Ryan v. Dox, 34 N. Y. 307, and cases there cited."

The importance of the consideration in determining whether the transaction was a sale or mortgage is given emphasis in Russell v. Southard, 12 How. 139, 13 L. Ed. 927, in the following words:

"In examining the question whether the transaction was a sale or mortgage, it is of great importance to inquire whether the consideration was adequate to induce a sale."

This court, in Wagg v. Herbert, 19 Okla. 525, 92 P. 250, adopted and applied the doctrine so announced, and on authority of the cited case further declared in the third syllabus the following:

"A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee, where the transaction is fair, honest, and without fraud, and where no undue influence or unconscionable advantage has been taken of his position by the mortgagee; but to insist on what was really a mortgage as a sale is in equity a fraud which cannot be successfully practiced under the shelter of any written papers, however precise and complete they may appear to be."

Pertinent to the resulting trust theory is the following doctrine declared in Bobier v. Horn, 95 Okla. 8, 222 P. 238:

"A resulting trust arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred, from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the grantor whom equity deems to be the real owner."

To the same and further effect that same can arise where no consideration is paid is Tolon et al. v. Johnson et ux., 104 Okla. 201, 230 P. 865. And where a transfer is made on the basis of a consideration that is paid, 60 O. S. 1941 § 137 controls. It reads:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Where the facts warrant, the principles of law hereinbefore announced are as fully applicable in cases where the transfer is made by sheriff on execution as where made between the parties in interest. The petition herein with allegations in substantial accord with the facts hereinbefore set

out sufficiently stated a cause of action.

The findings of fact and conclusions of law set forth in the journal entry are elaborate and cover 17 pages of the case-made. Of particular import in their bearing upon the conclusions of law reached we note the following:

It is found as a matter of fact, and supported by the evidence, (1) that there was an express agreement between Moore, president of the Bank, and Doggett that the Bank would bid in the lot and hold it under the original agreement, and collect and apply the rents therefrom upon the indebtedness of Doggett to the Bank; (2) that the amount of the purchase price exceeded such indebtedness by an amount in excess of $1,000, to which extent such consideration was in effect furnished by Doggett. And after concluding that a resulting trust arose, the court concluded further as follows:

"2. A resulting trust, being found to exist herein, the transactions herein involved are not within the statute of frauds. (McGann v. McGann, 169 Okla. 515, 37 P. 2d 939.)

"3. 'Limitation does not begin to run in favor of the trustee of a resulting trust until a clear repudiation of his trust is brought to the knowledge of the cestui que trust.' Leedy v. Ellis County Fair Association, Jan. 14, 1941, Vol. 12, Bar Journal page 28. (188 Okla. 348, 110 P. 2d 1099.)

" . . .

"6. The sheriff's deed in cause No. 920 in this court being dated March 31, 1923, covering the property involved herein, should be declared as taken by the defendant, Exchange Bank of Perry, grantee therein, as security for any indebtedness then owing by E. E. Doggett to it or thereafter contracted by E. E. Doggett to it, and the unpaid balance of such indebtedness, if any, constitutes a first lien upon the property herein involved."

The conclusions of law are sound. The fact that the sheriff's deed was to be security for existing and thereafter occurring indebtedness of Doggett to the Bank in the course of the continued relationship is not only reflected by the express parol agreement between the parties in interest but by their conduct in carrying same to completion. Furthermore, to hold that such deed in contemplation of the parties effected a sale of the equity of redemption would be to attribute to Doggett a willingness and desire to sell same at probably less than half its value without occasion therefor and in spite of manifest reasons to the contrary. The deed given under such circumstances can rise to no higher dignity than that of a mortgage, as was declared in Wagg v. Herbert, supra, where deed of mortgagor to mortgagee was contended to be a sale. The holding there that equity looks beyond the form in which a transaction is made and shapes its relief to carry out the true intention of the parties, to which end all the facts and circumstances including the conduct of the parties are subjects for consideration, is applicable in the instant case.

Viewed from the standpoint of a transfer independent of the agreement, it is manifest a large and probably the major portion of the expressed consideration was furnished by Doggett, and the facts justify the conclusion that the consideration, if any, moving from the Bank was for the benefit of Doggett whose title would be subject to a lien therefor and to be taken care of in the accounting. And such brings it within the scope of 60 O. S. 1941 § 137, giving rise to a resulting trust as declared by the trial court.

The trial court committed no error in awarding judgment on the title and directing an accounting.

In plaintiff in error's brief, emphasis on the alleged applicability of the statutes of limitations is presented in the argument under subparagraphs (1) and (3) quoted supra. Under paragraph (1) reliance is upon 12 O. S. 1941 § 93, providing that actions for recovery of land sold on execution are

to be brought within five years from recording the deed made in pursuance of the sale, and upon the case of Green et al. v. Wahl et al., 117 Okla. 292, 246 P. 419, and others to the effect that the statute is applicable whether such deed be void or voidable. The statute has no application in the instant case. Actions within the purview of the statute are those which seek to avoid the effect of such deed as an instrument of conveyance. The instant action does not challenge the operation of the deed as an instrument of conveyance but invokes the jurisdiction of equity which looks not alone to the instrument but beyond to ascertain the true intent of the parties which governs in equity in determining its effect (Worley, Receiver, v. Carter, 30 Okla. 642, 121 P. 669; Farrow v. Work, 39 Okla. 734, 136 P. 739; McKean v. McLeod, 81 Okla. 77, 196 P. 935; Orton, Adm'r, v. Citizens' State Bank, 99 Okla. 80, 225 P. 899).

Under subparagraph (3) it is urged that plaintiff's right of action to establish the sheriff's deed to be a mortgage is subject to five-year limitation provided in 12 O. S. 1941 § 95, subd. 1, and that being then in possession the statute began to run from recording of sheriff's deed on August 15, 1924. In support of the contention there is cited Mansfield, Sizer & Gardner v. Smith, 160 Okla. 298, 16 P. 2d 1066; Stroud v. Paulk, 179 Okla. 493, 66 P. 2d 24, and Tomlin v. Roberts, 126 Okla. 165, 258 P. 1041.

The Mansfield Case was one to set aside a sheriff's deed and is not in point for reasons stated under subparagraph (1). The Stroud-Paulk and Tomlin-Roberts Cases are in point but the controlling effect thereof is overlooked by only quoting from the language to the effect that such an action as this is one of equitable cognizance, and the right to redeem, being co-existent with right to foreclose, is subject to the same bar of the statute, which is five years. The gist of the holding in said case that is applicable here is thus stated:

"The right to redeem begins to run from the date of the adverse possession on the part of the mortgagee, and the action is barred within five years thereafter."

It is not the fact of possession but the adverse character thereof which requires action to avoid the bar of the statute. In the instant case the Bank was entitled to the possession until the rents and revenues had made it whole, and hence nothing short of an assertion of an absolute title would characterize such possession as adverse. The applicable rule is thus declared in Caro v. Wollenberg, 68 Ore. 420, 136 P. 866:

"When, by the terms of the mortgage, or by subsequent agreement, the mortgagee is to take and hold possession of the property until he shall satisfy his claim from the rents and profits, his possession does not become adverse until his demand has been satisfied from this source, or he asserts an absolute title in himself, and gives distinct notice thereof to the mortgagor. This rule applies in case of a deed absolute upon its face, given as security for the payment of a debt, and in effect a mortgage."

It is further urged that the controversy occurring between Doggett and Hall, cashier of the bank, during 1929 with reference to a check drawn on the bank by Doggett, payment of which was refused by the bank, was such a repudiation of the trust as to start the running of the statute, and therefore more than five years elapsed before the institution of the suit. The trial court held, on authority of Leedy v. Ellis County Fair Ass'n, 188 Okla. 348, 110 P. 2d 1099, that the repudiation necessary to put the statute in motion must be unequivocal and brought to the knowledge of the cestui que trust and that the evidence was insufficient to establish that such occurred. In this holding we find no error.

Our attention has been called to the case of Abraham v. McSoud, 188 Okla. 409, 109 P. 2d 822, wherein we affirmed a judgment of the trial court sus-

taining demurrer to the petition wherein it was alleged that plaintiff in foreclosure action agreed in consideration of defendant not contesting the action that plaintiff after taking title would hold same for use and benefit of defendant, collect the rents and profits to be applied upon mortgage indebtedness, and after same was fully paid would reconvey the land to defendant. We held as follows:

"It will be noted from the quotation above that the facts pleaded show that the contract was a parol contract to convey lands, and was therefore invalid under the statute of frauds (section 9455, O. S. 1931, 15 Okla. St. Ann. § 136); and was also an oral contract to create an express trust in relation to real property, and therefore invalid under the statute of uses and trusts (section 11808, O. S. 1931, 60 Okla. St. Ann. §136). See Oliphant v. Rogers, 186 Okla. 70, 95 P. 2d 887; Reed v. Peck & Hills Furniture Co., 93 Okla. 212, 220 P. 900."

Considering the action as one on contract as pleaded, the holding there is correct. There is nothing therein to indicate the statute of frauds would be held to apply if there had been pleaded facts sufficient to show a deed absolute to be a mortgage or that the statute of uses and trusts would be held to apply if facts showing resulting trust were pleaded. The basis for the distinction is stated in Stark v. Cannady, 3 Litt. 399, 14 Am. Dec. 76, as follows: "for the statute only forbids the enforcement of a trust or equity created by contract, and not such as results from the nature of the transaction by implication of law." The rule in this jurisdiction that parol evidence is admissible to show deed absolute on its face to be in fact a mortgage or gives rise to a resulting trust is too well established to require citation of authorities.

In view of what has been said it follows, and we hold, that there was no error in the court's finding that the Bank held title to lot 14 as trustee for the use and benefit of E. E. Doggett subject to a lien thereon to secure to the Bank the payment of indebtedness owing to the Bank by Doggett, and that upon showing that such indebtedness had been discharged the plaintiff, as representative of the estate of Doggett, would be entitled to a decree canceling the sheriff's deed of record and quieting title thereto against the claims of the Bank, but subject to the judgment rendered in the cause of Pricer v. Doggett.

The judgment of the trial court awarding the plaintiff the sum of $4,147.30 with interest thereon at the rate of 6% per annum from November 8, 1941, is attacked on the alleged ground that same is not supported by the evidence and is contrary to the weight of the evidence. We have considered the whole record and weighed the evidence to determine whether the judgment of the court is clearly against the weight of the evidence, and we conclude that same is not clearly against the weight of the evidence and that same is reasonably supported thereby.

Plaintiff in error Todd, on his appeal from the judgment of the court holding that he was not a bona fide purchaser for value, and in canceling the deed of the Bank under which he claimed title to lot 14, makes 14 assignments of error, but the only proposition presented for reversal of the judgment is that same is "contrary to the weight of the evidence and contrary to law." And the only argument presented thereunder is that the plaintiff, having pleaded that the deed was executed in pursuance of a conspiracy between the Bank and Todd to place lot 14 beyond plaintiff's reach, which is in substance an act of fraud upon plaintiff's rights, and that as there was no proof that he acted other than in good faith in the premises, the judgment of the court in avoiding said deed on the ground of no consideration paid was without the issue tendered by the plaintiff. And, further, that, if within the issue, defendant paid a valuable consideration

by reason of the notes given for the purchase price and secured by mortgage on said lot.

There is no merit in these contentions. Defendant's cause of action for said land is not dependent upon the quality of the transaction between the Bank and defendant Todd and the right of the latter thereunder is defensive matter and as such is an affirmative defense and the burden of the proof thereof rests upon the defendant. This question was decided in Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 P. 220, as follows:

"To constitute a 'bona fide purchaser' three things must exist: (a) A purchase in good faith; (b) for value; and (c) without notice. And, where a subsequent purchaser interposes the defense of a bona fide purchaser, the burden is upon him to show a purchase for value, and, on his failure to do so, he cannot claim the benefits of a bona fide purchaser."

The valuable consideration mentioned means a consideration that has been paid or something equivalent such as he has divested himself of some legal right, or has been induced to so change his condition that deprivation of legal title would work purchaser injustice. Luschen v. Stanton, 192 Okla. 454, 137 P. 2d 567. In the instant case no part of the consideration was paid in cash. The entire purchase price was evidenced by notes of Todd to the Bank and secured by mortgage upon the premises purchased. These notes still in the hands of the Bank at time of trial evidenced no obligation that defendant as maker was irrevocably bound to pay. The legal phase of the situation here is clearly reflected in the following holding in Nebraska Moline Plow Co. v. Blackburn, 74 Neb. 246, 104 N. W. 178:

"One is not a bona fide purchaser for value unless he has actually paid the purchase price or become irrevocably bound for its payment, as, for instance, by giving his negotiable obligation, which has been or may be transferred to an innocent purchaser according to the law merchant, so as to cut off his defense to it. But in this case, whether the defendant's notes were negotiable or not, it is certain that they never were negotiated."

Premises considered, the judgment of the trial court is affirmed.

HURST, V. C. J., and RILEY, OSBORN, WELCH, and ARNOLD, JJ., concur. CORN, J., dissents.